*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0070P (6th Cir.)
File Name: 04a0070p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

No. 02-6011

DAVID E. HENLEY, JR.,
*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 01-00148—R. Allan Edgar, Chief District Judge.

Argued: December 2, 2003

Decided and Filed: March 5, 2004

Before: MARTIN and MOORE, Circuit Judges;
McKEAGUE, District Judge.[*]

———————

### COUNSEL

**ARGUED:** Martin J. Levitt, LEVITT & LEVITT, Chattanooga, Tennessee, for Appellant. Perry H. Piper,

---

[*] The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Martin J. Levitt, LEVITT & LEVITT, Chattanooga, Tennessee, for Appellant. Perry H. Piper, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

———————

### OPINION

———————

BOYCE F. MARTIN, JR., Circuit Judge. A jury convicted David E. Henley, Jr. of several offenses related to the distribution of methamphetamine, for which the district court imposed a sentence of life imprisonment. Here, Henley has a number of challenges to his trial and sentence, yet little support for his conclusions. Thus, we affirm.

### I. BACKGROUND

At the time of his August 28, 2001, indictment on methamphetamine related charges, Henley was twenty-four years old and had no prior criminal record. While several of his co-conspirators – most notably Sophan Luy and Bryan Sanders – pleaded guilty, Henley exercised his Sixth Amendment right to a jury trial. At Henley's trial, Luy and Sanders testified against him in hopes of receiving a reduction in their respective sentences – which they did ultimately receive. At the conclusion of the trial, the jury convicted Henley of possession with the intent to distribute in excess of fifty grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), conspiracy to distribute in excess of five hundred grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and using a "communication facility" to facilitate his drug offenses in violation of 21 U.S.C. § 843(b).

Among the issues at sentencing was the quantity of methamphetamine involved in the conspiracy. Under the

2001 United States Sentencing Guidelines, which govern this case, a base offense level of thirty-six applies where the quantity of methamphetamine attributable to the defendant is between five and fifteen kilograms. U.S.S.G. § 2D1.1(c)(2). The presentence report attributed 14.989 kilograms of methamphetamine to Henley. The district court declined to adopt this amount and instead undertook an independent examination of the record. Based solely upon the trial testimony of Sophan Luy, the district court found Henley responsible for at least five kilograms of methamphetamine. Therefore, despite the considerable difference between the drug quantity estimated in the presentence report and the quantity found by the district court, under section 2D1.1(c)(2) of the Sentencing Guidelines the district court had no choice but to apply the same base offense level – thirty-six – as provided in the presentence report.

The district court also assessed several sentencing enhancements: a two-point enhancement pursuant to section 2D1.1(b)(1) for possession of a firearm; a three-point enhancement pursuant to section 3B1.1 for Henley's supervisory role in the conspiracy; and a two-point enhancement pursuant to section 3C1.1 for obstruction of justice. These sentencing enhancements brought Henley's total offense level to forty-three, which carries a mandatory life sentence.

In a striking illustration of the disparity in sentences imposed upon similarly situated defendants depending upon whether they exercise their Sixth Amendment right to a jury trial or waive that right in favor of a plea bargain, Luy and Sanders received prison sentences of 87 months[1] and 93

---

[1]Luy pleaded guilty to one count of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 846. *United States v. Luy*, Case No. 1:00-CR-46-1, Judgment (E.D. Tenn.). As part of the plea agreement, six other counts in the indictment were dismissed. *Id.* Luy was originally sentenced to 136 months of imprisonment, but the United States subsequently filed a motion for a reduction in Luy's sentence

months,[2] respectively. *United States v. Luy*, Case No. 1:00-CR-46, Order Amending Judgment (E.D. Tenn.); *United States v. Sanders*, Case No. 1:01-CR-98, Order Amending Judgment (E.D. Tenn.).

In this timely appeal, Henley challenges his conviction and sentence on several grounds. We address each of his arguments in turn.

## II.  ANALYSIS

### A.  *Sufficiency of Evidence Establishing Henley's Participation in a Conspiracy*

Henley's primary argument is that the evidence adduced at his trial was insufficient to establish the existence of a conspiracy to distribute methamphetamine and, even if a conspiracy existed, the evidence was insufficient to prove that he was a participant therein. Unfortunately for Henley, our review of the jury's finding that he participated in a conspiracy to distribute methamphetamine is strictly limited. We review a challenge to the sufficiency of the evidence "by

---

pursuant to Federal Rule of Criminal Procedure 35(b), which the district court granted, thereby reducing his sentence to 87 months. *United States v. Luy*, Case No. 1:00-CR-46, Order Amending Judgment (E.D. Tenn.).

[2]Sanders pleaded guilty to one count of conspiracy to distribute in excess of fifty grams of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B), as well as possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(I). *United States v. Sanders*, Case No. 1:01-CR-98-02, Judgment (E.D. Tenn.). As part of the plea agreement, the remaining count in the indictment was dismissed. *Id.* Sanders was originally sentenced to 101 months of imprisonment – 41 months on the first count and 60 months on the second, to be served consecutively. As in Luy's case, however, the United States subsequently filed a motion for a reduction in Sanders's sentence pursuant to Rule 35(b), which the district court granted, thereby reducing his sentence to 93 months. *United States v. Sanders*, Case No. 1:01-CR-98, Order Amending Judgment (E.D. Tenn.).

considering the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *United States v. Spearman*, 186 F.3d 743, 745 (6th Cir. 1999). "A defendant making such a challenge bears a very heavy burden. Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt. Furthermore, it is well-settled that uncorroborated testimony of an accomplice may support a conviction in federal court." *Id.*

To prove a conspiracy, the following elements must be established:

(1) An object to be accomplished. (2) A plan or scheme embodying means to accomplish that object. (3) An agreement or understanding between two or more of the defendants whereby they become definitely committed to cooperate for the accomplishment of the object by the means embodied in the agreement, or by any effectual means.

*United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir. 1999) (quoting *United States v. Bostic*, 480 F.2d 965, 968 (6th Cir. 1973)) (internal quotation marks omitted). Proof of a formal agreement is not required to establish a conspiracy; "a tacit or material understanding among the parties" is sufficient. *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990). "Drug distribution conspiracies are often 'chain' conspiracies such that agreement can be inferred from the interdependence of the enterprise. One can assume that participants understand that they are participating in a joint enterprise because success is dependent on the success of those from whom they buy and to whom they sell." *Spearman*, 186 F.3d at 746 (citing *United States v. Bourjaily*, 781 F.2d 539, 546 (6th Cir. 1986)).

Contrary to Henley's assertion, the evidence adduced at his trial, construed in the light most favorable to the United States, is sufficient to establish that a conspiracy to distribute methamphetamine existed. Henley, Sanders, Luy and an individual named "Scott" from Atlanta apparently formed the core of the conspiracy. According to the testimony elicited at trial, Scott provided methamphetamine to Luy, who in turn sold it to Henley, who then sold it to Sanders, who sold it to others. In short, the evidence shows that Henley and one or more co-conspirators had an "understanding" to employ this "scheme" to accomplish the "object" of selling methamphetamine. *Gibbs*, 182 F.3d at 420.

Once a conspiracy has been shown, only "slight" evidence is needed to connect a defendant to a conspiracy. *Gibbs*, 182 F.3d at 422. Henley argues that the evidence presented at his trial is insufficient to connect him to the conspiracy because, at most, it proves only that he sold methamphetamine to Sanders. While Henley is correct that a "buyer-seller relationship" is not enough to make someone a participant in a drug conspiracy, "further evidence indicating knowledge of and participation in the conspiracy can be enough to link the defendant to the conspiracy." *Gibbs*, 182 F.3d at 421. We have recognized that the "trust" involved in "fronting" drugs under a delayed payment or credit arrangement "suggests more than a buyer-seller arrangement between the parties." *United States v. Humphrey*, 287 F.3d 422, 435 (6th Cir. 2002), *overruled on other grounds*, *United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002). In this case, Sanders testified that Henley "fronted" methamphetamine to him, and Luy testified that on numerous occasions he provided Henley with large quantities of methamphetamine. Viewing this – and other – evidence in the light most favorable to the United States, as we must, *Spearman*, 186 F.3d at 745, we conclude that sufficient evidence supported the jury's determination that Henley participated in a conspiracy to distribute methamphetamine.

Because Sanders and Luy received downward departures as a result of their cooperation with the United States, Henley challenges the credibility of their testimony. It is not the province of this Court, however, to weigh the credibility of witnesses – particularly in the context of determining whether sufficient evidence supports a conviction. *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993) ("In addressing sufficiency of the evidence questions, this Court has long recognized that we do not weigh the evidence, consider the credibility of witnesses or substitute our judgment for that of the jury.") (citing *United States v. Evans*, 883 F.2d 496, 501 (6th Cir. 1989)); *United States v. King*, 272 F.3d 366, 370 (6th Cir. 2001) (rejecting defendant's challenge to the credibility of his co-conspirators, who had benefitted from cooperation agreements with the United States, as "challenges to the quality of the government's evidence and not the sufficiency of the evidence"); *see also Spearman*, 186 F.3d at 745 (explaining that an accomplice's uncorroborated testimony may support a conviction).

We certainly recognize that the prospect of a reduced sentence could have provided a powerful incentive for Henley's co-conspirators to testify against him. Whether that incentive affected the credibility of their testimony, however, is for the jury to decide. The jury in this case was aware that Sanders and Luy had reason to believe that they could benefit from a reduction in their sentences as a result of their testimony against Henley. We simply cannot second-guess the jury's determinations with regard to whether and to what extent that motive may have affected those witnesses' credibility.

### B. Quantity of Methamphetamine Attributable to Henley

Henley also challenges the district court's determination of the quantity of methamphetamine for which he was responsible. The district court's drug quantity determination "must stand unless it is clearly erroneous." *United States v.*

*Ward*, 68 F.3d 146, 149 (6th Cir. 1995); *see also United States v. Owusu*, 199 F.3d 329, 338 (6th Cir. 2000).

A court may hold a defendant responsible for an amount of drugs only if the court finds that it is more likely than not that the defendant actually was responsible for at least that amount. An approximation by a court is not clearly erroneous if it is supported by competent evidence in the record. In other words, the court finding must have some minimum indicium of reliability beyond mere allegation.

*Ward*, 68 F.3d at 149 (citations and internal quotation marks omitted). We must uphold the district court's determination in this regard if it is consistent with the factual record, even if we would have reached a different conclusion under de novo review. *United States v. Darwich*, 337 F.3d 645, 663 (6th Cir. 2003) (citing *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.")).

In determining whether a district court's calculation of drug quantity is clearly erroneous, a key issue is the extent to which the court identified the evidence on which it relied in making that calculation. *Compare, e.g., United States v. Baro*, 15 F.3d 563, 569 (6th Cir. 1994) (vacating defendants' sentences because the district court attributed an extra kilogram of cocaine without making any factual findings), *United States v. Medina*, 992 F.2d 573 (6th Cir. 1993) (vacating sentences because the district court imputed knowledge of the whole extent of the conspiracy to the defendants without making a finding that it was reasonable to do so), *and United States v. Walton*, 908 F.2d 1289, 1302-03 (6th Cir. 1990) (vacating sentences because the district court extrapolated rate of cocaine dealing without identifying competent circumstantial evidence to support the extrapolation), *with Ward*, 68 F.3d at 150 (upholding sentence where the district court "clearly spelled out the reasons for his

conclusion that Ward was responsible for over 3,000 kilograms of marijuana" and did not speculate as to the quantity), *and United States v. West*, 948 F.2d 1042 (6th Cir. 1991) (upholding sentence where the district court's drug quantity determination was based upon testimony that the defendant had been involved in many transactions, each involving over four kilograms of cocaine).

Based upon our careful review of the record, we conclude that the evidence supports the district court's calculation of the quantity of methamphetamine attributable to Henley and that the court properly identified the particular evidence on which it relied in making that calculation. During the sentencing hearing, the district court referenced the testimony of various witnesses, but – in order to avoid "double counting" – relied exclusively upon Luy's testimony in making its quantity determination.[3] Luy testified that over the course of eight to ten months, he traveled to Atlanta once a month and on each trip purchased four pounds of methamphetamine, keeping two pounds for himself and giving two pounds to Henley. Occasionally, Luy would make two trips per month instead of one, in which case he would purchase two pounds of methamphetamine on each trip, keeping one pound for himself and giving one pound to Henley. The district court concluded that Henley could be held liable for over five kilograms of methamphetamine[4] based upon Luy's testimony alone. The district judge explicitly considered Luy's credibility and concluded: "I do have confidence in what Luy said" because his testimony was consistent with the testimony of other witnesses.

---

[3] Henley argues that he lacked notice of the United States' intent to rely upon Luy's testimony to establish the drug amounts. That notice was provided, however, in a June 14, 2002, letter from the United States to Henley's counsel.

[4] Two pounds of methamphetamine per month over the course of 8 months equals sixteen pounds or approximately 7.3 kilograms.

Henley challenges the district court's reliance upon Luy's testimony. Henley emphasizes that Luy received a reduction in his sentence as a result of his cooperation with the United States and contends that Luy was merely approximating the quantity of drugs that he provided to Henley.[5] We find these arguments to be unavailing. Testimonial evidence from a co-conspirator may be sufficient to determine the amount of drugs for which a defendant should be held accountable, even where the co-conspirator has reason to believe that he may receive a reduced sentence as a result of his or her testimony. *United States v. Hernandez*, 227 F.3d 686, 697-98 (6th Cir. 2000); *Darwich*, 337 F.3d at 664. Moreover, drug quantity may be determined by way of estimates or approximations if exact amounts are uncertain. *Hernandez*, 227 F.3d at 698-99 (upholding a district court's determination that 1,400 pounds of marijuana were involved in the conspiracy based upon testimony that "an accomplice made 7 trips to Saginaw, Michigan from the Rio Grande Valley and delivered 200 pounds on each trip").

The district court's determination that Henley was responsible for five kilograms or more of methamphetamine was properly supported by Luy's testimony and was not clearly erroneous.

### C. Sentencing Enhancement Under Section 3B1.1

Henley also challenges the district court's imposition of a three-level enhancement pursuant to section 3B1.1 of the

---

[5] Henley also points out that Luy's trial testimony differs in certain respects from his story as recounted in the presentence report. The presentence report provides that Luy traveled to Atlanta once a month for approximately one year (rather than the 8 to 10 months he testified to at trial) and picked up at least one pound of methamphetamine for Henley on each trip. This scenario would make Henley responsible for twelve pounds of methamphetamine, or approximately 5.4 kilograms. Under either version of events, then, Henley would still be responsible for over five kilograms of methamphetamine.

Sentencing Guidelines for his supervisory role in the conspiracy. The proper standard of review to employ in evaluating the district court's imposition of this enhancement is subject to some debate. Prior to the Supreme Court's decision in *Buford v. United States*, 532 U.S. 59 (2001), "it was clear that we reviewed a district court's factual findings for clear error and legal conclusions de novo." *United States v. Solorio*, 337 F.3d 580, 600 (6th Cir. 2003). In *Buford*, however, the Supreme Court held that the district court's application of section 4B1.2 should be reviewed deferentially rather than de novo, "in light of the fact-bound nature of the legal decision." 532 U.S. at 66. We reserve judgment as to whether the district court's application of section 3B1.1 to the facts of this case should be reviewed deferentially or de novo, because we would affirm using either standard of review.

Under section 3B1.1, a defendant's base offense level should be increased as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

U.S.S.G. § 3B1.1(a), (b).

In order to apply a three-level enhancement under section 3B1.1(b), there need only be evidence to support a finding that the defendant was a manager or supervisor of at least one other participant in the criminal activity, and that the criminal activity involved five or more participants or was otherwise extensive. *United States v. Caseslorente*, 220 F.3d 727 (6th Cir. 2000). The Sentencing Guidelines direct the court to consider factors such as "the exercise of decision-making

authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, comment. (n.4). The key issue is not direct control or ultimate decision-making authority, but rather the defendant's "relative responsibility." *United States v. Gaitan-Acevedo*, 148 F.3d 577, 595-96 (6th Cir. 1998).

The district court found that the evidence established that five or more participants were involved in the criminal activity – Henley, Sanders, Luy, "Scott" from Atlanta, Chad Brown, Candiac Stanfield, Robert Walker and Christy Croy – and that Henley "was at the center of the conspiracy." The court also found that:

> [Henley] got this methamphetamine and he did control the distribution of it of what he got here locally. As has been pointed out in the presentence report and in the evidence at trial, and here by Mr. Piper, he did employ people, others, perhaps, at least as many as four other persons to help him collect drug debts, enforcers, if you will. That includes Walker and Sanders, and the two people at the Logan's Roadhouse. And he did recruit those people to do this. And this was an extensive conspiracy that involved a large amount of drugs. And he controlled the flow of those drugs to a large amount of people.

Sentencing Tr. JA 330.

In light of this evidence, the court concluded that Henley was "certainly" a "manager or supervisor" because he "did manage the distribution of the drugs" and "he managed other people." Sentencing Tr. JA 331. As a result, the district court found that Henley should receive a three-level enhancement

pursuant to section 3B1.1(b), but it declined to impose the four-level enhancement urged by the United States.

Henley asserts that there is no evidence to support the district court's conclusion that he employed enforcers to intimidate or assault other individuals. We disagree. Sanders testified that Henley and Robert Walker assaulted Chad Brown because of a drug debt. Sanders also testified that he had assisted Henley in assaulting an individual named Brett Oakey over a drug debt. Additionally, there was testimony that Henley was assisted by two other men when he assaulted Michael Williams in the restroom of Logan's Roadhouse. That evidence is sufficient to support the district court's conclusion that Henley was a "manager or supervisor" under section 3B1.1(b).

Henley also argues that several of the individuals identified by the court – particularly Stanfield and Croy – were not "participants" within the meaning of section 3B1.1, but rather were merely drug customers. A "participant" is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, comment. (n.1). Even excluding Stanfield and Croy, however, we find that the evidence adduced at trial supports the district court's determination that five or more individuals were criminally responsible for the offense.

### D. Evidentiary Rulings

Finally, Henley challenges the district court's admission of a tape recorded telephone conversation that he had with Sanders, as well as the testimony of two witnesses. Henley claims that the district court's admission of this evidence was an abuse of discretion and violated Federal Rules of Evidence 401, 403 and 404. The propriety of the district court's admission of evidence is reviewed for abuse of discretion. *United States v. Middleton*, 246 F.3d 825, 835 (6th Cir. 2001). An abuse of discretion that does not affect substantial

rights is harmless error and must be disregarded. FED. R. CRIM. P. 52(a).

The telephone conversation between Henley and Sanders was tape recorded by equipment at the Hamilton County Jail, where Sanders had been incarcerated. During the conversation, Henley told Sanders that "them fed pens are cush, man," apparently implying that the federal penitentiary is not a difficult place to serve prison time. Henley and Sanders also discussed drugs, money, informants, the charges that Sanders was facing and other assorted topics. Henley objected to the admission of this tape recording, arguing that his comments implied that he had previously been convicted of a crime for which he served time in federal prison. He also argued that the tape recording was irrelevant. The district court admitted this tape recording over Henley's objection.

We find that the tape recording was relevant because it tended to establish the relationship that he had with Sanders, his co-conspirator. Moreover, contrary to Henley's assertion, we do not believe that his comments imply that he had previously served time in federal prison. Therefore, the admission of the tape recording did not violate the Federal Rules of Evidence and was not an abuse of discretion.

Henley also challenges the district court's admission of testimony given by two witnesses: Dorothy Turner, the mother of Sanders's girlfriend, and Randy Hood, Sanders's neighbor. Turner testified that one night at her home, she observed Chad Brown's head bleeding. Hood testified that in June 2001, he observed a truck that turned out to belong to Henley at Sanders's home approximately three or four times. Hood further testified that on one occasion he observed a person, whom he could not identify, leave Sanders's home, remove a pistol from the back of his pants and get into this truck.

Because Henley did not object at trial to the admissibility of either witness's testimony, we must review the district

court's admission of this testimony for plain error. *See* FED. R. CRIM. P. 51; *United States v. Samour*, 9 F.3d 531, 537 (6th Cir. 1993), *rev'd on other grounds, United States v. Reed*, 77 F.3d 139 (6th Cir. 1996). Under the plain error doctrine, this Court considers (1) whether there was an error; (2) whether the error was "plain" – *i.e.*, clear or obvious; and (3) whether the error affected substantial rights. *United States v. Segines*, 17 F.3d 847, 851-52 (6th Cir. 1994). Even if all three factors exist, the Court must then "decide whether the plain error affecting substantial rights seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* at 852 (citing *United States v. Thomas*, 11 F.3d 620, 630 (6th Cir. 1993)).

The district court committed no error in admitting this testimony. Turner's testimony was relevant because it tended to corroborate Sanders's testimony that Henley and another individual, Robert Walker, assaulted Chad Brown at Turner's home. Hood's testimony was relevant because it tended to establish a relationship between Sanders and Henley and it corroborated Sanders's testimony that Henley visited his home. Moreover, we find neither witness's testimony to be violative of Rule 403 or Rule 404.

### III. CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.