NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0613n.06
Filed: October 14, 2008

No. 06-6560

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| ALEX ALEPIN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

_____

BEFORE: MARTIN, GRIFFIN, and GIBSON, Circuit Judges.[*]

GRIFFIN, Circuit Judge.

Defendant Alex Alepin appeals his below-the-Guidelines sentence of thirty-eight months of imprisonment and four years of supervised release, imposed pursuant to a guilty plea to one count of conspiracy to distribute and possession with intent to distribute in excess of 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. Alepin raises two challenges to his sentence: (1) whether the district court erred in applying a three-level enhancement to his base offense level under U.S.S.G. § 3B1.1(b) (2005) for defendant's perceived role as a "manager or supervisor" in the criminal activity; and (2) whether the sentence is procedurally and substantively unreasonable, and excessive, in light of the sentencing factors set forth in 18 U.S.C.

_____

[*]The Honorable John R. Gibson, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

§ 3553(a). Alepin contends in this latter regard that the district court failed to consider adequately his voluntary withdrawal from the conspiracy years before the charges were brought, his cooperation with authorities, and his subsequent crime-free life. For the reasons stated below, we affirm Alepin's sentence.

I.

Defendant Alepin was born and raised in Canada and came to the United States in 1999 to play professional hockey. He retired from hockey in 2004 and is currently a Tennessee resident.

On February 27, 2006, the government filed a one-count information charging Alepin with conspiracy to distribute and possession with intent to distribute in excess of 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. The charge stems from defendant's participation, in 2001 and 2002, in the distribution and sale of marijuana brought into the states of New York and Pennsylvania from a source in Quebec, which he then transported, or paid truck drivers to transport, to his residence in Tennessee. Alepin sold the marijuana to three middlemen, who in turn sold it to a network of other customers. Alepin ceased his participation in the conspiracy in 2002, although he did not voluntarily turn himself in. The marijuana ring continued to operate, and Alepin was criminally charged in 2006.

On June 21, 2006, Alepin entered into a plea agreement and pleaded guilty to the one-count information. He cooperated fully with the government in its investigation. Alepin admitted that he personally received and sold at least 100 kilograms, but less than 400 kilograms, of marijuana while

participating in the conspiracy. The parties stipulated to a "Factual Basis" underlying the plea, which

provided:

> Defendant Alepin is personally responsible for at least one-hundred (100) kilograms, but less than four-hundred (400) kilograms, of marijuana.
>
> From approximately January, 2001, defendant Alepin received quantities of hydroponic marijuana, also known as "kind bud," from Jean Claude Dubois and Sebastien Flocari. Dubois and Flocari arranged for the transportation of this marijuana from sources of supply in Quebec, Canada.
>
> In 2001, defendant Alepin traveled to New York City to obtain twenty-to-fifty pound loads of marijuana from couriers who were sent by Dubois and Flocari. Alepin would then transport this marijuana to his residence in the Eastern District of Tennessee. Defendant Alepin paid approximately $2,800 to $2,900 per pound and sold the marijuana for approximately $3,200 per pound to customers in the Eastern District of Tennessee. Luc Hebert, who was known to defendant Alepin as Poppy, worked for Dubois and Flocari in arranging transportation of marijuana.
>
> Defendant Alepin engaged individuals in the Eastern District of Tennessee to transport marijuana from New York and other locations to the Eastern District of Tennessee. Sam Latham went to upstate New York in the summer of 2002 to obtain loads of marijuana from defendant Alepin's source of supply and transport it to the Eastern District of Tennessee. Dwight Newport made at least one trip to New York to obtain multiple-pound quantities of this marijuana and transport it to the Eastern District of Tennessee. Dwight Newport and Jason Kiser were two of defendant Alepin's customers in Knoxville, Tennessee. Defendant Alepin paid Dwight Newport to make trips to Pennsylvania to obtain marijuana. Dwight Newport met a semi tractor trailer at a location in Pennsylvania and obtained approximately 15-20 pounds of hydroponic marijuana and transported it to the Eastern District of Tennessee on behalf of defendant Alepin.
>
> Coconspirator Flocari arranged for semi tractor trailer deliveries of "kind bud" marijuana to defendant Alepin in the Eastern District of Tennessee. Coconspirator Flocari paid drivers to transport the marijuana in hidden compartments located on the trucks. Sometimes, defendant Alepin met the deliveries of this marijuana by tractor trailer trucks at least three times at locations in Strawberry Plains, Tennessee. Dwight Newport accompanied defendant Alepin on at least one of these trips.

A presentence report ("PSR") was prepared and provided to the parties. In light of the stipulated amount of marijuana, Alepin's base offense level was set at 26. Pursuant to U.S.S.G. § 3B1.1(a), the probation officer added four levels for Alepin's involvement as an "organizer or leader" of a criminal activity involving five or more participants, but made a three-level downward adjustment for defendant's acceptance of responsibility. His post-adjustment total offense level was therefore 27. With a criminal history category of I (no prior criminal record), the resultant advisory Guidelines range was 70 to 87 months' imprisonment. Under 21 U.S.C. § 841(b)(1)(B), the applicable statutory minimum sentence is 5 years, with a maximum of 40 years.

Defendant objected to the recommended four-level enhancement under § 3B1.1(a), arguing that he had no leadership role in the conspiracy. The government filed a motion for downward departure pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. Based on Alepin's substantial assistance in the investigation and his lack of criminal history, the government recommended a sentence of 42 months, a forty-percent reduction from the bottom end of the Guidelines range.

At the sentencing hearing held on November 29, 2006, defense counsel objected to Alepin's classification as an "organizer or leader" and resultant sentence enhancement. Defense counsel emphasized that he was not challenging the Factual Basis for the guilty plea, but argued that defendant was not a leader or organizer, particularly in light of the fact that the conspiracy continued for quite some time without him, until the other participants were finally arrested. Defense counsel urged leniency based on defendant's voluntary withdrawal from the criminal activity, his cooperation with the government's investigation, his lack of criminal history and concomitant low risk of

recidivism, strong family support, and his reformed, exemplary behavior since 2002. Numerous letters from local friends and family were introduced, attesting to Alepin's positive contributions to the community.

Alepin testified at the sentencing hearing, confirming the undisputed facts underlying his guilty plea. He testified that he lost his construction and landscaping business as a result of his incarceration in this case and expressed remorse for his conduct.

The district court ultimately assessed a three-level enhancement pursuant to U.S.S.G. § 3B1.1(b) for defendant's role as a "manager or supervisor," rather than the recommended four-level enhancement as an "organizer or leader" under § 3B1.1(a). In doing so, the court noted in pertinent part:

> Mr. Alepin, according to the factual basis agreed upon by you and the Government concerning the actual criminality you've been charged here with, you made trips to various places – New York, maybe Pennsylvania, maybe up here at Straw Plains – on numerous occasions; and you obtained marijuana in large quantities, 15 to 20 to 30 pounds at a time. And you divided that up among some other people, local people here; and they sold it to local consumers.

> You were, therefore, a – in the Court's opinion – a manager or supervisor of this conspiracy. And a three-level increase pursuant to [§ 3B1.1(b)] is warranted, but not as . . . an organizer or leader but as a manager and supervisor only so that your base offense level is 26. With a criminal history category of I, the advisory guideline range is 63 to 78 months.

Taking into consideration the government's motion for a downward departure of forty percent based on defendant's substantial assistance and the nature and circumstances of the offense and defendant's history, the district court granted the government's motion and sentenced Alepin to

thirty-eight months of imprisonment and four years of supervised release. Alepin now timely

appeals his sentence.

II.

First, Alepin maintains that the factual findings set forth by the district court at the sentencing

hearing do not support the application of the managerial role enhancement under U.S.S.G. §

3B1.1(b). He argues that the court neither made the requisite findings of fact regarding the number

of people involved in the conspiracy nor determined whether he engaged in a leadership or

managerial role over another participant. Alepin further suggests that there is no proof in the record

that he exercised control over his customers' sales of marijuana to others (in terms of price, quantity,

or customer) or that he received a larger share of the fruits of the crime than other members in the

conspiracy, so as to support the enhancement. He contends that although he conceded, per the

Factual Basis, that he would "engage others" to transport marijuana, he made no admission that he

*directed* others in the operation. In short, Alepin argues that his relationship with the other

coconspirators was merely that of buyer and seller.

Although the appropriate standard of review of a Guidelines role enhancement under

U.S.S.G. § 3B1.1 remains an open question in our court, *see United States v. Moncivais*, 492 F.3d

652, 660 (6th Cir. 2007), we need not settle the issue here because the present circumstances support

affirmance of the enhancement under either option – a deferential or de novo standard of review.

The burden lies with the government to prove, by a preponderance of the evidence, that a particular

sentencing enhancement applies. *United States v. Dupree*, 323 F.3d 480, 491 (6th Cir. 2003).

U.S.S.G. § 3B1.1 provides:

Based on the defendant's role in the offense, increase the offense level as follows:

(a)  If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels.

(b)  If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by **3** levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by **2** levels.

U.S.S.G. § 3B1.1 (2005).  Application Note 1 to § 3B1.1 defines a "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted."

Application Note 2 of the Commentary accompanying this Guideline further explains that "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager or supervisor of one or more other participants."  *See also Moncivais*, 492 F.3d at 661 ("'[T]here need only be evidence to support a finding that the defendant was a manager or supervisor of at least one other participant in the criminal activity, and that the criminal activity involved five or more participants or was otherwise extensive.'") (quoting *United States v. Henley*, 360 F.3d 509, 517 (6th Cir. 2004)).  Application Note 4 to § 3B1.1 sets forth the factors to be considered in classifying the defendant's role:

In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling.  Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation

in planning and organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

It is not necessary that a defendant meet each of these requirements. *United States v. Gates*, 461 F.3d 703, 709 (6th Cir. 2006) (citing *United States v. Ospina*, 18 F.3d 1332, 1337 (6th Cir. 1994)). "The key issue is not direct control or ultimate decision-making authority, but rather the defendant's 'relative responsibility.'" *Henley*, 360 F.3d at 517 (citing *United States v. Gaitan-Acevedo*, 148 F.3d 577, 595-96 (6th Cir. 1998)). "'Merely playing an essential role in the offense is not equivalent to exercising managerial control over other participants and/or the assets of a criminal enterprise.'" *United States v. LaLonde*, 509 F.3d 750, 765 (6th Cir. 2008) (quoting *United States v. Vandeberg*, 201 F.3d 805, 811 (6th Cir. 2000)).

In the present case, Alepin concedes that the conspiracy involved five or more participants. Defense counsel admitted that defendant played an "integral part" in the conspiracy because he "brought dope from Point A to Point B." He nonetheless maintained that defendant was not a leader or supervisor of the dope-smuggling operation.

However, as the government argues persuasively, the Factual Basis clearly indicates that Alepin was the link between his Canadian suppliers – Dubois and Flocari – and the three Tennessee distributors – Latham, Newport, and Kaiser. During a two-year period, he was responsible for the delivery of between 100 and 400 kilograms of marijuana from Canada to Tennessee. He paid the Canadian sources $2,800 to $2,900 a pound and resold the marijuana to the three distributors for $3,200 a pound. Alepin was notified when a shipment from Canada was ready to be delivered and, if he was unable to pick it up in person, he sent someone else to do so. The Factual Basis details

specific instances in which Alepin "engaged" both Latham and Newport to travel to upstate New York to retrieve and transport a load of marijuana from defendant's Canadian sources, and another separate occasion when Newport met a semi-tractor trailer in Pennsylvania and transported the marijuana to Tennessee "on behalf of Alepin."

This is consistent with a managerial or supervisory role. Alepin received a call from Canada, determined how the marijuana was going to be picked up, sent another participant in the conspiracy to retrieve it if he was unavailable, and handled the distribution among the three dealers, making a profit on each pound. We have affirmed a district court's imposition of managerial role sentencing enhancements under similar circumstances. *See*, *e.g.*, *Henley*, 360 F.3d at 517 (evidence sufficient to support § 3B1.1(b) enhancement where the defendant controlled as many as four other persons in the flow of drugs and to help him collect drug debts); *United States v. Solorio*, 337 F.3d 580, 601 (6th Cir. 2003) (supervisory-role enhancement affirmed where uncontroverted evidence showed that the defendant recruited another participant as an accomplice in a drug conspiracy, planned and directed all of recruit's drug activities, and recruit delivered bags of cocaine and money and kept records for the defendant); *United States v. Munoz*, 233 F.3d 410, 416 (6th Cir. 2000) (finding no error in application of § 3B1.1(b) enhancement where evidence showed that the defendant "was in repeated contact with the informant [in scheduled drug deal] and played a role in coordinating both the delivery of and payment for the amphetamine."); *United States v. Bingham*, 81 F.3d 617, 629-30 (6th Cir. 1996) (imposition of managerial-role enhancement not clearly erroneous where evidence

showed that the defendant was source of supply of crack cocaine, contacted supplier, negotiated purchase price, and made arrangements for couriers to transport cocaine from New York to Ohio).

Most recently, in *United States v. Jeross*, 521 F.3d 562 (6th Cir. 2008), we held that the district court did not err in imposing the § 3B1.1(b) enhancement in light of testimony establishing that one of the defendants handled drug transactions with individual distributor-sellers, received drugs from Canada, permitted pills to be repackaged for distribution in her home, doled out the repackaged pills to four or five distributors, kept financial and transactional records, collected profits that distributors returned to her, and passed profits on to another participant. "Her role as a distributor may have placed her 'in the middle of the drug distribution chain' as she asserts, but it was no less important for that reason, and does not preclude the finding that she was a manager who exercised decisionmaking authority." *Id.* at 580.

Here, Alepin's managerial status in the conspiracy is likewise supported by the stipulated Factual Basis and the district court's sufficient factual findings pertaining to his role in the offense. A "reasonable reading of the district court's discussion of the evidence on this issue" justifies the court's application of the three-level enhancement under § 3B1.1(b). *United States v. Caseslorente*, 220 F.3d 727, 735 (6th Cir. 2000) (internal citation and quotation marks omitted). We therefore conclude that enhancement of Alepin's sentence under § 3B1.1(b) was proper.

III.

Alepin next contends that his sentence is procedurally and substantively unreasonable and excessive under the circumstances. His claim of unreasonableness is based upon the district court's

alleged failure to consider adequately, and address expressly, all of the relevant sentencing factors under 18 U.S.C. § 3553, including Alepin's post-offense, pre-arrest rehabilitation, his cooperation with authorities, the loss of his business and damage to his reputation, and his admission of guilt. Alepin notes that it is undisputed that he voluntarily stopped his illegal activities and withdrew from the conspiracy in 2002. Alepin further asserts that his sentence is excessive in view of the statutory requirement that the sentence be "sufficient, but not greater than necessary" to fulfill the statutory sentencing goals, as provided in 18 U.S.C. § 3553(a).

This court reviews a district court's sentencing determination for procedural and substantive reasonableness, using a deferential abuse-of-discretion standard. *United States v. Houston*, 529 F.3d 743, 753 (2008) (citing *Gall v. United States*, — U.S. — , 128 S. Ct. 586, 594 (2007)). When we undertake reasonableness review of a sentence,

> we first ensure that the district court committed no significant procedural error, such as . . . failing to consider the [18 U.S.C. ] § 3553(a) factors . . . or failing to adequately explain the chosen sentence. Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. For a sentence to be substantively reasonable, it must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a).

*United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008) (internal citations and quotation marks omitted).

"Section § 3553(a) mandates that a district court imposing a sentence consider the defendant's guideline range; the nature of the offense; the characteristics of the defendant; the need to deter criminal conduct, protect the public, and provide the defendant with appropriate treatment;

and the need to avoid sentencing disparities with defendants who have been found guilty of the same conduct and who have similar criminal histories." *Id.* at 573-74. A ritual incantation of the § 3553(a) factors to affirm a sentence is not required. *United States v. Williams*, 436 F.3d 706, 709 (6th Cir. 2006). Rather, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, — U.S. — , 127 S. Ct. 2456, 2468 (2007).

Alepin's below-the-Guidelines sentence is presumed not to be unreasonably severe. *Curry*, 536 F.3d at 573. Moreover, because Alepin made no objection to the sentence after the district court announced it, the procedural reasonableness of the sentence is reviewed for plain error. *United States v. Milan*, 516 F.3d 479, 486-87 (6th Cir. 2007) (citing *United States v. Vonner*, 516 F.3d 382 (6th Cir. 2008) (en banc)). Thus, Alepin must show (1) error, (2) that was obvious or clear, (3) that affected his substantial rights, and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Phillips*, 516 F.3d 479, 487 (6th Cir. 2008). This is a "heavy burden," *id.*, which Alepin has not met in this case.

The sentencing record reflects that the district court listened to Alepin's arguments and testimony and interspersed pertinent questions and comments throughout the hearing. The district court acknowledged, albeit in general terms, the relevant § 3553(a) factors and explained that these factors supported a sentence at the bottom of the recommended Guidelines range. The court acknowledged Alepin's good behavior and community reputation, but further noted that defendant did not withdraw "soon enough" and did not turn himself in. The court carefully considered

Alepin's objection to the § 3B1.1 enhancement and accepted his argument in part, recalculating the advisory Guidelines range in light of its determination that defendant was a manager/supervisor, not an organizer or leader in the conspiracy. The district court then departed downward forty percent from the applicable Guidelines range of 63 to 78 months based upon Alepin's substantial assistance and imposed a 38-month sentence.

In sum, the record demonstrates that the district court considered each of defendant's arguments in mitigation, but found that these arguments did not merit a lower sentence. Alepin has not shown that the district court's statement of reasons was plainly erroneous or that any omissions in the court's sentencing analysis affected his substantial rights. Notwithstanding Alepin's good behavior since pulling out of the marijuana distribution conspiracy, he was involved in and profited from a sizeable drug operation. We therefore conclude that Alepin's sentence is both procedurally and substantively reasonable.

## IV.

For these reasons, we affirm the judgment of the district court.