NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0767n.06

No. 06-6280

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Dec 04, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| DELOIS HARRIS, | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: GRIFFIN and KETHLEDGE, Circuit Judges; CARR, Chief District Judge.[*]

KETHLEDGE, Circuit Judge. Delois Harris appeals her convictions and sentence for various felonies arising from two schemes to steal credit cards. She argues that her guilty plea was involuntary and that the district court improperly found that she had a leadership role in the schemes. We reject her arguments, and affirm.

I.

Harris admitted in the district court to participating in two separate credit-card schemes. Both schemes preyed upon elderly cardholders. In the first, which took place from December 2002 to February 2004, Harris stole credit cards by placing phone calls to elderly cardholders, in which she would pretend to be a card-company representative and ask for personal and account

[*] The Honorable James G. Carr, Chief United States District Judge for the Northern District of Ohio, sitting by designation.

information. After obtaining the information, Harris would call the card company, change the account address, and have a new card sent to the new address. Harris and others would then use the cards for cash withdrawals and purchases. In total, this scheme involved 29 victims and caused losses exceeding $63,000.

The second scheme took place from February 2004 to November 2004, and was on a larger scale. Again, Harris called elderly persons, obtained information from them, and then requested new cards from the issuing company. In this scheme, however, Harris also made fraudulent wire transfers from the victims' accounts. Harris recruited numerous other persons to assist in this scheme, and gave each of them a portion of its proceeds. This scheme caused losses exceeding $682,000.

Harris was indicted for the first scheme in September 2004, and charged with 21 counts of wire fraud, mail fraud, unlawful use of another person's identity to commit a felony, and fraud in connection with access devices. In a separate case, Harris was indicted on the second scheme in July 2005, and charged with 17 wire-fraud counts.

Harris thereafter agreed to plead guilty to all counts in both indictments. In return, the government agreed not to oppose a reduction of her Guidelines range for acceptance of responsibility. The parties also agreed that, for purposes of calculating Harris's Guidelines range, "the total amount of relevant conduct and any other sentencing enhancements will be determined by the sentencing court utilizing a preponderance of the evidence standard."

The guilty-plea hearings for each case were held separately. During the hearing for the 2005 indictment, Harris's counsel objected to the government's characterization of Harris as the ringleader in the scheme. The district court initially suggested a trial on that issue, because it thought

(incorrectly) that the issue might be reserved for a jury under *United States v. Booker*, 543 U.S. 220 (2005). In the court's mind, the plea agreement thus represented a waiver of Harris's right to have a jury decide her sentencing enhancements. The court briefly recessed the hearing so that Harris and her counsel could discuss whether she wished to make that waiver and to proceed with the plea agreement generally. Her counsel stated after the recess that she did. The court then accepted Harris's guilty plea for the charges in the 2005 indictment.

A different district court judge later accepted Harris's guilty plea for the charges in the 2004 indictment. The two cases were then consolidated for sentencing. At the sentencing hearing, the court asked Harris whether she had any objections to the Presentence Report (PSR). Her counsel objected to the PSR's descriptions of the second scheme, stating that "the information . . . comes from individuals who are supplying the information and they are benefiting from the information." Harris's counsel specifically conceded, however, that he did not contest the accuracy of that information or any other information in the PSR.

The court adopted the PSR's findings of fact. The court specifically found that Harris "was an organizer and I think she carefully carried out this scheme and the solicitation of the people to make this scheme work." Accordingly, the court increased Harris's offense level by four levels pursuant to U.S.S.G. § 3B1.1(a). Her final Guidelines range was 97 to 121 months' imprisonment; the court sentenced her to 104 months.

This appeal followed.

II.

A.

Harris argues that her guilty plea was involuntary. Specifically, she contends that the district court threatened her with a trial if she did not withdraw her objection to the leadership enhancement. Harris never objected to her plea's voluntariness in the district court, so we review her claim for plain error. *See United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005).

The record belies Harris's claim. The district court did not threaten Harris with a trial if she refused to withdraw her objection to the leadership enhancement. Instead, the court merely sought to ensure that Harris was aware of her putative right to a jury trial on that issue, and to confirm that she wished to waive it. (The district court's only error in that exchange was in thinking that Harris had a right to a jury trial on this issue in the first place. *See United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir. 2006).) The record therefore makes clear that Harris's guilty pleas were voluntary.

Harris makes other arguments that are derivative of her involuntariness one. Namely, she says her sentence was procedurally unreasonable because it was "based on bad law and a coerced, involuntary admission," and that her sentence was substantively unreasonable because "the District Court based the sentence on" an invalid plea. Harris's Br. at 12, 13. Since Harris's pleas were in fact voluntary, we reject these arguments as well.

B.

Harris also challenges the district court's finding that she was a leader of the second scheme. Under the Guidelines' leadership-enhancement provision, a defendant's offense level is increased by four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five

-4-

or more participants or was otherwise extensive[.]" U.S.S.G. § 3B1.1(a). We review the district court's finding that Harris played such a leadership role for clear error. *See United States v. Henley*, 360 F.3d 509, 516 (6th Cir. 2004).

Harris argues there was insufficient evidence to support the finding because "the government put on absolutely no proof that Ms. Harris was a leader." Harris's Br. at 15. But Harris did not dispute any of the facts recited in her PSR; and those facts overwhelmingly supported the district court's finding. As set forth in the PSR, Harris's second scheme involved 15 participants. Harris recruited many of those participants, obtained the information necessary to steal the credit cards, organized the wire transfers, and kept for herself most of the money obtained through them. These facts standing alone are enough for the enhancement here. *See, e.g.*, *United States v. Walls*, 546 F.3d 728, 735 (6th Cir. 2008) (affirming four-level enhancement when defendant organized the scheme, recruited at least four people, and gave them orders); *United States v. Moncivais*, 492 F.3d 652, 661 (6th Cir. 2007) (upholding four-level enhancement for a drug supplier who gave orders and took a large share of the profits).

Harris also asserts that her sentence was procedurally unreasonable because the district court "failed to make an adequate record concerning the reasons for applying the leadership enhancement[.]" Harris's Br. at 12-13. Although Harris is correct that courts "may not merely summarily adopt the factual findings in the presentence report[,]" *United States v. Tarwater*, 308 F.3d 494, 518 (6th Cir. 2002), that only applies to *disputed* matters at sentencing. And here, Harris's counsel specifically conceded that there was no dispute as to the facts recited in the PSR. Those

facts, in turn, provided an ample basis for the court's finding. Harris's argument is therefore without merit.

The district court's judgments in 04-CR-20392 and 05-CR-20250 are affirmed.