**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0194n.06

**No. 08-2524**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|                              |   |                                         |
|------------------------------|---|-----------------------------------------|
| UNITED STATES OF AMERICA,    | ) |                                         |
|                              | ) |                                         |
|    Plaintiff-Appellee, | ) |                              |
|                              | ) |                                         |
| v.                           | ) | On Appeal from the United States        |
|                              | ) | District Court for the Western          |
| LINDELL BROWN,               | ) | District of Michigan                    |
|                              | ) |                                         |
|    Defendant-Appellant. | ) |                             |

**FILED**

*Mar 30, 2011*

LEONARD GREEN, Clerk

Before:      BOGGS, SUHRHEINRICH, and STRANCH, Circuit Judges.

          BOGGS, Circuit Judge.

Defendant Lindell Brown appeals his sentence for conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841. He argues that the district court erred by assessing a leadership enhancement, by improperly considering whether the government would make a motion under Federal Rule of Criminal Procedure 35(b) after sentencing, and by not reducing his sentence to account for time served on a state sentence. Finding these arguments to be without merit, we affirm the district court's sentence.

**I**

Brown was involved in a large cocaine distribution ring called Ahh Dee Ahh (ADA), centered in Lansing, Michigan. ADA's mastermind was Jamokenteyatte Hampton, but Brown was a major cocaine supplier. The cocaine came from California, and found its way into the Michigan-

based drug ring through a number of people. On occasion, Brown sold directly to Hampton. On other occasions, Brown would sell the cocaine to co-conspirator Felicia Blake, who would then resell it to Hampton. At other times, he supplied small amounts to co-conspirator Damon Bean. Bean's primary source, however, was Blake (whose source, in turn, was Brown). Bean told officers that Blake supplied him with over 200 kilograms of cocaine in a period of roughly two years. During some of these transactions, he would pay Blake but pick up the cocaine from Brown.

Brown and Blake had a close relationship. During an interview following her arrest, Blake said that Brown first recruited her for cocaine sales in 1991. Thereafter, Brown began bringing moderate amounts of cocaine (1 to 2 kilograms) from Los Angeles to Detroit, but he was quickly arrested. A few months after his release in 2001, he and Blake began planning to transport much larger quantities during the holidays. Blake had a number of friends with their own customers, but Brown worked with these women insofar as he transported and guarded the drugs. He also often turned over the cocaine to customers after the women had been paid. He also rented Blake's house for storing the drugs, and changed all the locks so that only he and his California supplier had access.

The law soon caught up with Brown. On June 12, 2005, he was stopped for speeding in Detroit. During the stop, officers observed a quantity of United States currency in a plastic bag next to a duffel bag. Upon examination, the duffel bag contained more than 6 kilograms of cocaine. He was convicted and sentenced in state court for the cocaine found in his possession at the time of his arrest. On February 14, 2008, a superseding indictment was filed in federal court, which added Brown as a defendant to the ADA prosecution. On June 4, 2008, Brown pled guilty to the charges in the indictment, and the district court ordered a presentence report (PSR). The PSR calculated

Brown's base offense level as 38, and added four levels, pursuant to U.S.S.G. § 3B1.1(a), because he had a leadership role. His adjusted offense level, therefore, was 42. The PSR deducted three levels for acceptance of responsibility, leading to a total offense level of 39. His criminal history category was calculated as III, which would lead to a Guidelines sentence of 324-405 months.

Luckily for Brown, he received a number of generous departures. The government filed a motion under U.S.S.G. § 5K1.1, recommending a departure of 3-4 levels, and the court departed 4 levels. The district court also reduced Brown's criminal history category from III to II. Brown objected to the leadership enhancement under U.S.S.G. § 3B1.1(a), claiming he was never a leader. The government conceded that he was not as much of a leader as Hampton, and agreed that he should only receive an enhancement of 3 levels, as opposed to 4. The district court was reluctant on this point, saying: "Okay. I find it's at least a three-point, probably a four, but I'll give Mr. Brown the benefit of the doubt . . . a three-point leadership, clearly." With these changes, Brown's total offense level was 34 with a criminal history category of II, giving him a Guidelines range of 168-210 months.

The court sentenced Brown to a within-Guidelines term of 204 months in prison, to run concurrently with his state sentence on a related state drug conviction. The court, however, declined to adjust the sentence downward to account for time served on the related state sentence pursuant to U.S.S.G. § 5G1.3(b). Brown timely filed a motion to correct his sentence, reiterating the argument that his sentence should be adjusted for time served in state custody. The court again declined, noting that giving credit for time served while awaiting sentence was within the province of the Bureau of Prisons. Brown filed this timely appeal.

**II**

*1. Leadership Enhancement*

In this circuit, the standard of review governing the imposition of a U.S.S.G. § 3B1.1 enhancement remains unclear. *United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir. 2009). We will normally review a district court's legal conclusions de novo, and its factual determinations for clear error. In this case, there is no dispute as to the facts. However, the Supreme Court has held under similar circumstances that a legal decision with regard to an application of the Sentencing Guidelines was "fact-bound," and therefore entitled to "deferential" review. *Buford v. United States*, 532 U.S. 59, 66 (2001). Many of our decisions analyzing § 3B1.1 have cited *Buford*, but failed to articulate its precise impact. *See, e.g.*, *United States v. Lalonde*, 509 F.3d 750, 764 (6th Cir. 2007). Others, however, have stated that clear error is the correct standard. *See, e.g.*, *United States v. Jeross*, 521 F.3d 562, 579 (6th Cir. 2008). We need not decide the issue because even under a de novo standard, the managerial enhancement was proper.

The only controversy on this point is whether Brown managed another *person*, or if he was merely managing drugs and selling them to his co-conspirators. Our precedent makes clear that a defendant cannot be assessed a managerial role enhancement merely for selling drugs to others. *See United States v. Swanberg*, 370 F.3d 622, 629 (6th Cir. 2004) ("[T]he record at most demonstrates only that [the defendant] sold drugs to multiple individuals. He had no control over what they did with the drugs after the purchases. This does not meet the degree of control required by [our case law]."). Rather, in assessing whether a defendant acts as a manager, we have looked to factors such as:

> the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*Jeross*, 521 F.3d at 579 (using these factors to assess a three-level managerial role enhancement under § 3B1.1(b)).[1]  We have also made clear that control over other participants need not be extensive.  In *Jeross*, for example, we upheld the imposition of a 3-level enhancement where a defendant's house was used as the drug distribution base, and where she repackaged and distributed the drugs as well as collected the profits to give to someone higher up.  *Id.* at 580.

In this case, the district court did not commit reversible error in imposing the three-level sentence enhancement.  The record shows that Brown exercised a great deal of authority within the conspiracy—he determined when and how the drugs would be transported from California to Michigan, and claimed a large share of the fruits of the crime.  Critically, Brown also recruited Blake to sell drugs and served as a point person for delivering cocaine once buyers had paid Blake and her friends.  Thus, the facts of this case show that Brown exercised sufficient control over Blake to make him a manager with regard to her.  The enhancement was appropriate.

---

[1]Because the court agreed that Brown acted as a manager rather than a leader, he was only assessed three points, in accordance with § 3B1.1(b) instead of four, in accordance with § 3B1.1(a). The cited factors are contained in U.S.S.G. § 3B1.1, comment. (n.4), as distinguishing a leader from a mere manager.  However, we have followed *Jeross* in weighing them to determine whether a § 3B1.1(b) enhancement is warranted.  *See United States v. Walker*, 399 F. App'x 75, 84-85 (6th Cir. 2010); *United States v. Alepin*, 296 F. App'x 509, 513-14 (6th Cir. 2008).

*2. The court's mention of Rule 35(b)*

We generally review all sentences for reasonableness under the deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007). However, when a party fails to object to a procedural defect in sentencing despite being given an opportunity to do so, we review the claim of procedural unreasonableness for plain error. *United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (en banc). Because Brown alleges that the district court considered an improper factor in determining his sentence, his challenge could be framed as attacking either the substantive or procedural reasonableness of his sentence. *See United States v. Recla*, 560 F.3d 539, 544-545 (6th Cir. 2009). Thus, to the extent Brown challenges the procedural reasonableness of his sentence, we review for plain error because he failed to object. However, to the extent his challenge is to substantive reasonableness, we review for abuse of discretion. Under either standard, however, his challenge fails.

During the sentencing hearing, the government moved for a downward departure, stating that Brown provided substantial assistance to its investigation and prosecution of a narcotics officer and his own high-level cocaine suppliers. *See* U.S.S.G. § 5K1.1. The court responded to the prosecutor's glowing remarks by asking, "And you anticipate that should this matter continue, you will be writting [sic] Mr. Brown back for potential trial and you will be asking the Court for a 35(b) motion if in fact you need to do that?" The prosecutor responded that he was "very confident" that a Rule 35(b) motion would be filed at a later time. The court responded only with, "[o]kay. Thank you." The court then granted a four-level downward departure.

On appeal, Brown argues that the court's consideration of a possible Rule 35(b) motion renders his sentence unreasonable. In support, he cites our decision in *United States v. Recla*, 560 F.3d 539 (6th Cir. 2009). In that decision—which came down after Brown's November 14, 2008 sentencing—we reversed the same judge under somewhat similar facts. The defendant was providing substantial assistance to the authorities, and there had been some discussion that the government was considering a Rule 35(b) motion. The district court then stated: "It will be the sentence of this Court . . . that a 70-month sentence in the Federal Bureau of Prisons will be imposed *with the understanding* that there probably will be subsequent motions filed." 560 F.3d at 544 (emphasis added). We noted that "sentencing courts cannot consider the potential for a future sentence reduction in imposing sentence." *Id.* at 545. The danger, of course, is that the sentencing court will "impos[e] a higher sentence than it would have in the absence of the government's stated intention." *Id.* at 546. Based on the court's language and the fact that the sentence was at the high end of the Guidelines range, we determined that the record was "ambiguous" as to whether the district court had improperly considered the possibility of a Rule 35(b) motion, and remanded for resentencing. *Id.* at 546-47.

However, Brown's case is distinguishable from *Recla*. The district court's inquiry creates a serious issue for appeal, particularly because Brown's sentencing judge was the same court we reversed in *Recla*, and Brown's sentence was also toward the upper end of the Guidelines range. However, a mere reference to Rule 35(b) is not sufficient to imply that the district court considered an impermissible factor if it appears that the possibility of such a motion did not influence the court's decision. *See United States v. Rosenbaum*, 585 F.3d 259, 266 (6th Cir. 2009) ("We are convinced

that the result would have been the same even if there had never been any mention of a Rule 35 motion."). In this case, the discussion of a Rule 35(b) motion came not while the court was weighing the ultimate sentence, but rather in a discussion regarding a downward departure. Indeed, in Brown's case, the district court actually granted a four-level departure for substantial assistance—the maximum requested by the government. Further, the district court did not raise the prospect of a Rule 35(b) motion when explaining its reasons for choosing the 204-month sentence. This difference in timing is an important distinction from *Recla*, where Rule 35 was mentioned in the same breath the court used to pronounce the sentence. Therefore, we do not expand *Recla*'s holding to these facts.

*3. Failure to grant an adjustment*

Brown argues that the district court committed reversible error by failing to adjust his sentence pursuant to U.S.S.G. § 5G1.3(b). The Bureau of Prisons has noted that this area of law is "probably the single most confusing and least understood federal sentencing issue." By way of background: awarding credit for time served is the exclusive responsibility of the Bureau of Prisons (BOP) under 18 U.S.C. § 3585(b). *United States v. Wilson*, 503 U.S. 329, 333-34 (1992). However, courts are not powerless in this arena. Section 5G1.3(b) of the United States Sentencing Guidelines not only authorizes a sentencing court to reduce a defendant's sentence for time served on related charges, but actually uses mandatory language. A sentence reduction under § 5G1.3(b) is called an adjustment. Federal courts have noted the confusion created by conflating the terms. *See, e.g.*, *Ruggiano v. Reish*, 307 F.3d 121, 133 (3d Cir. 2002), *abrogated by regulation* ("[W]e encourage

sentencing courts in the future to avoid using the term 'credit' to refer to § 5G1.3 adjustments so as not to engender any unnecessary confusion.").

Brown argued at sentencing and again in his motion to correct sentence that the district court should adjust his sentence downward to account for the 41 months he served in state custody after his conviction for possession of six kilograms of cocaine. He made this argument because he believed, based on the PSR, that the conduct was "relevant" to his federal conviction. *See* U.S.S.G. § 5G1.3(b). However, the PSR in this case seems to have been relying on language from the 2002 version of the United States Sentencing Guidelines. In 2003, § 5G1.3(b) was amended to mandate adjustments only where the "relevant conduct" was "the *basis for an increase in the offense level* for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments)" (emphasis added).

Brown is not eligible for relief under § 5G1.3(b). Brown's base offense level of 38 was calculated based on his responsibility for more than 150 kilograms of cocaine, but he was held responsible for 1,260 kilograms of cocaine in total. Therefore, even if the six kilograms from his state conviction were deducted, he would have the same offense level. *See United States v. Merrill*, 332 F. App'x 791, 793 (3d Cir. 2009) (holding that a prior conviction would not meet the requirements of § 5G1.3(b) because it was not used to calculate the offense level); *cf.* U.S.S.G. § 5G1.3, comment. (n.2**(D)**) (providing an example of the application of § 5G1.3(b), in which a prior conviction for 15 grams of cocaine raises the overall quantity from 40 grams to 55 grams, and the base offense level from 14 to 16). Thus, Brown was ineligible for an adjustment under § 5G1.3(b)

because the conduct that led to his state sentence was not the basis for an increase in his offense level.

### III

For all these reasons, we **AFFIRM** the sentence of the district court.