RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0115p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

                                                      No. 07-1252

          *v.*

ROY STEPHEN RECLA,
                    *Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 06-00029—Robert Holmes Bell, District Judge.

Submitted: January 21, 2009

Decided and Filed: March 25, 2009

Before: MOORE, CLAY, and KETHLEDGE, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant. Maarten Vermaat, ASSISTANT UNITED STATES ATTORNEY, Marquette, Michigan, for Appellee.

———————————

**OPINION**

———————————

CLAY, Circuit Judge. Defendant, Roy Stephen Recla, appeals the sentence of the district court imposed following his plea of guilty to one count of intentionally and unlawfully conspiring to distribute and to possess with intent to distribute oxycodone in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). Recla contends that, in imposing sentence, the district court improperly considered the possibility that his sentence would be reduced by a future Rule 35(b) motion. Recla also argues that his sentence is procedurally unreasonable because the district court failed to consider his argument that the court should

reduce his sentence to account for the time he spent in state custody.  Finally, Recla asserts that his sentence is "too severe" and, thus, substantively unreasonable because his sentence would have been lower had the district court properly evaluated his arguments.  For the reasons set forth below, we **VACATE** Recla's sentence and **REMAND** for resentencing.

## BACKGROUND

On October 10, 2006, the United States charged Recla with knowingly, intentionally, and unlawfully conspiring to distribute and to possess with intent to distribute oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C).  The charges stem from a series of investigations by state and federal authorities related to Recla's possession of firearms, illegal drug use, and diversion of prescription narcotics.

In 2004, Michigan state authorities received information that Recla, a convicted felon, possessed numerous firearms.  The Bureau of Alcohol, Tobacco, and Firearms ("ATF") became involved in the investigation, and discovered that Recla owned several firearms, and regularly used them for hunting and other activities.  The investigation also revealed that Recla, who legally could not purchase firearms, enlisted family and friends to obtain the firearms on his behalf.

Beginning in 2003, Recla was the target of an investigation by the Drug Enforcement Administration ("DEA") regarding his excessive prescriptions for narcotic pain medication.  State authorities also began investigating Recla's drug use after state police arrested Recla and his girlfriend, Lisa Marie Makela, for erratic driving in May of 2005 and discovered spoons with drug residue in the car.  At an interview following his arrest, Recla admitted he had recently used cocaine.

The next day, Recla was released from custody on bond.  Police officers agreed to Recla's request that the officers drive him home, and also stop at a pharmacy so that he could pick up his prescription for oxycodone.  After obtaining his prescription, he took two pills while in the car with the officers.  During the drive, he disclosed that he kept a firearm at his father's house, and also told the officers that Makela had used heroin the day police arrested them for erratic driving.  When he and the officers arrived at his house, Recla invited the officers inside.  He then informed them that Makela had pawned several of his firearms,

offering proof of these transactions by showing officers the pawn slips. At the end of the conversation, Recla, in an apparent attempt to avoid jail time, volunteered to become an informant for the state's drug investigation unit.

Two days later, on May 13, 2005, Recla and Makela agreed to speak with state drug enforcement authorities. During the interview, Recla and Makela disclosed their illegal use of heroin and oxycodone, as well as their extensive network of drug dealers. Recla named numerous sources of narcotics, and admitted that he supported himself through money he received in exchange for the sale of prescription oxycodone pills.

The DEA interviewed Recla on May 26, 2005, and learned that Recla began seeing his doctor in early 2001 for pain following knee-replacement surgery. Over the next four years, Recla visited his doctor on a monthly basis to request a new prescription for oxycodone, each time reporting that his medication was lost or stolen.

Based on their investigation, on June 14, 2006, state authorities charged Recla with possession of heroin, possession of a firearm by a felon, and use of heroin in violation of numerous Michigan laws. While Recla awaited trial on state charges, the government brought federal charges for possession and possession with intent to distribute oxycodone in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). On October 26, 2006, state authorities transferred Recla to federal custody.

Recla pleaded guilty to the federal charges on October 26, 2006. Pursuant to the plea agreement negotiated in September of 2006, state authorities agreed not to initiate further prosecution for firearm possession and drug trafficking, and to dismiss the pending charges related to possession and use of heroin and firearm possession by a felon. The government stipulated that it also would drop its prosecution for firearm and drug possession. In exchange, Recla agreed to provide information regarding his drug-trafficking activities and to assist the government with its prosecution of individuals involved in the drug transactions. The government agreed that, based on Recla's assistance, it would consider filing a motion to reduce Recla's sentence pursuant to either § 5K1.1 of the Guidelines or Rule 35(b) of the Federal Rules of Criminal Procedure.

After Recla pleaded guilty, the Probation Department prepared a presentence investigative report ("PSR"). The PSR calculated Recla's base offense level at 26, and

added two levels for possession of firearms.  Based on Recla's written statement accepting responsibility and apologizing for his actions, the PSR recommended that Recla's offense level be decreased by two.  The PSR also reduced Recla's offense level by one for his timely guilty plea, resulting in a total offense level of 25.  After calculating Recla's offense level, the PSR determined his criminal history category.  Although Recla had an extensive criminal record, the PSR assigned him to criminal history category I because most of his illegal activities "were . . . no longer scored [for purposes of computing criminal history]."  (J.A. 56.)  Under the Guidelines, Recla's criminal history category and offense level supported a sentencing range of fifty-seven to seventy-one months imprisonment.  Pursuant to 21 U.S.C. § 841(b)(1)(C), Recla's offense was subject to a maximum term of imprisonment of twenty years.

Prior to the sentencing hearing, Recla filed a sentencing memorandum requesting that the district court "impose a sentence consistent with the factors outlined in 18 U.S.C. § 3553(a) and the . . . United States Sentencing Guidelines."  (J.A. 32) (emphasis removed).  The memorandum also urged consideration of several mitigating factors in imposing sentence.  Recla's primary argument was that his "persistent mental health issues, . . . historical use of almost every available form of illegal controlled substance, and . . . inability to maintain employment" resulted from a 1974 hunting accident in which Recla shattered his right femur, an injury that required Recla to take prescription pain medication. (J.A. 29.)  (The prescription for oxycodone following Recla's knee-replacement surgery was unrelated to the hunting accident.)  The memorandum emphasized Recla's acceptance of responsibility and request for drug treatment and counseling so that he could "move on from [his] past."  (J.A. 30.)

In addition, the memorandum disputed the PSR's suggestion that the court consider departing upward from the Guidelines range.  Recla argued that any prison sentence within the Guidelines range would have the desired deterrent effect because Recla never had spent more than one year in prison for previous convictions.  Recla also repeated an objection he made to the PSR's sentence enhancement for possession of firearms, arguing that there was no evidence that the guns were "present" during the drug-trafficking activities since Recla stored the guns at his parents' home.  Finally, Recla urged the sentencing court to consider

reducing the sentence imposed by the time he spent in state custody prior to his transfer to federal custody.

On February 15, 2007, the district court held the sentencing hearing. At the hearing, Recla withdrew his objection to the two-point addition for firearm possession. Neither party objected to the PSR's calculation of Recla's criminal history category or total offense level. At the hearing, defense counsel emphasized Recla's cooperation with the government's prosecution of individuals involved in drug trafficking, including Recla's testimony before a grand jury. In addition, defense counsel requested that the court consider placing Recla at a Wisconsin prison so that he could be available to assist the government in future investigations. The government did not express a position regarding Recla's cooperation, noting that it would be "left for another day" and that the government was "considering a post-sentencing Rule 35 motion based on *future* cooperation." (J.A. 50) (emphasis added).

As in the sentencing memorandum, defense counsel's primary argument during the sentencing hearing was that Recla became addicted to pain medication following a hunting accident and developed a tolerance, requiring him to take increasing doses of narcotics and to resort to illegal drugs as a substitute for his medication. Defense counsel asked the court to consider requiring counseling for Recla to assist him in moving past his drug problems. Defense counsel also emphasized that any term of imprisonment exceeding one year would fulfill the purpose of providing deterrence, and that any additional time imposed through an upward departure from the Guidelines would not have a corresponding deterrent effect. Finally, defense counsel noted that much of the time Recla spent in state custody was for the benefit of the federal investigation, and asked the court to consider reducing Recla's sentence to take into account the time he served in state prison. Recla also made a statement to the court, asking for a "break in sentencing" so that he could better himself and receive counseling.

Following these arguments, the district court announced sentence. First, the district court expressed its view that Recla's "prior lawlessness is not clearly represented by his criminal history score due to the way th[e] Guidelines Commission scores it." (J.A. 56.) The district court then sentenced Recla as follows:

. . . I find that under 3553(a), . . . Mr. Recla's pattern of conduct demonstrates a lack of respect for law and need to protect the public. He appears to feel that he's a law unto himself with utter disregard for the serious strains such conduct places on the medical care system which is financially strapped in his rural area, on local law enforcement, local service agencies striving to cope with the addiction problems that he's contributed to.

It seems to this Court that the nature and circumstances of this offense is of some duration. The history and characteristics of this defendant is that he really hasn't helped himself or anybody else in this process.

This is a serious offense. It plagues his community and demonstrates his marked lack of respect for law. The public needs to be protected and Mr. Recla needs to be provided with medical, educational, and correctional treatment.

It will be the sentence of this Court based upon the entire review of the presentence report, the entire review of the fine sentencing report, the entire review of the guilty plea, that a 70-month sentence in the Federal Bureau of Prisons will be imposed with the understanding that there probably will be subsequent motions filed subsequently [sic], with four recommendations to the Bureau of Prisons.

One is that Mr. Recla receive substance abuse evaluation and that his complained-of medical condition be evaluated for purposes of receiving appropriate care and appropriate pain treatment . . . .

Secondly, I want Mr. Recla to receive some mental health evaluation subsequent to the medical evaluation.

Thirdly, I want Mr. Recla to secure his GED certificate. . . .

And lastly, the Court would find that if it is at all possible for Mr. Recla to be placed in [] Oxford, Wisconsin . . . , that that be a potential place where he may be placed. . . .

Thereafter, Mr. Recla will be placed on three years of supervised release . . . .

(J.A. 58-60.)

The district court then explained its reasons for rejecting the "hunting accident" explanation. The judge stated that he could not "quite buy the hunting accident when he was a teenager giving rise to his helplessness as a result of drug addiction. That is too simplistic and it just defies imagination." (J.A. 56.) The district court further noted that Recla's extensive injuries as a teenager "bear[] no excuse" for his criminal conduct or continued use of illegal substances. (J.A. 57.) The district court indicated that it did not "know of any legitimate way a person can say, I'm in pain all the time . . . . . [so] I have to illegally use drugs in order to get by. That makes no sense." (*Id.*)

On February 16, 2007, the district court entered its judgment sentencing Recla to seventy months of imprisonment. Recla timely appealed.

**DISCUSSION**

I.       **REFERENCE TO FUTURE SENTENCING REDUCTION**

   A.       **Standard of Review**

Both the government and Recla suggest that the district court's alleged consideration of a potential Rule 35(b) motion presents a procedural reasonableness issue. However, it is not clear that Recla's challenge is to the procedural reasonableness of his sentence. In allegedly considering a factor that has no relation to the § 3553(a) factors—a possible post-sentencing motion to reduce Recla's sentence—the district court might have misapplied § 3553(a), as "it is clear that a 'sentence based on an improper factor fails to achieve the purposes of § 3553(a) and may be unreasonable regardless of length.'" *United States v. Malone*, 503 F.3d 481, 484 (6th Cir. 2007) (quoting *United States v. Williams*, 456 F.3d 1353, 1361 (11th Cir. 2006)). Regardless of the nature of Recla's challenge, however, we review his sentence for reasonableness. *See Gall v. United States*, ___ U.S. ___, 128 S. Ct. 586, 597 (2007).

   B.       **Analysis**

During the sentencing hearing, the government indicated that any sentence reduction would occur pursuant to a "post-sentencing Rule 35 motion based on future cooperation." (J.A. 50.) Rule 35(b) of the Federal Rules of Criminal Procedure provides that, "[u]pon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person." Fed. R. Crim. P. 35(b)(1). Thus, Rule 35(b) "allows a district court to re-sentence a defendant to reflect substantial assistance rendered after the initial sentence was imposed." *United States v. Ridge*, 329 F.3d 535, 541 (6th Cir. 2003). On appeal, Recla argues that, in determining his sentence, the district court improperly considered the government's intention to seek a sentence reduction under Rule 35(b).

When the sentencing court considers an impermissible factor in calculating a defendant's sentence, a reviewing court will vacate and remand for resentencing. *E.g.,*

*United States v. Keller*, 498 F.3d 316, 324-25 (6th Cir. 2007) (vacating and remanding because the district court improperly considered the defendant's post-sentencing conduct in the context of a *Booker* remand). In their arguments to this Court regarding whether the district court considered an improper factor, both Recla and the government rely on case law establishing that sentencing courts are precluded from considering a future sentence reduction under Rule 35(b) in determining whether to grant the government's motion to reduce the defendant's sentence under USSG § 5K1.1.[1] These cases emphasize that a sentencing court must maintain the "temporal boundaries" between motions under § 5K1.1 and those filed pursuant to Rule 35(b). Thus, a sentencing court is precluded from considering "the prospect of Rule 35(b) relief in the future" in its determination of whether to grant the government's motion under § 5K1.1. *Ridge*, 329 F.3d at 542. In this case, however, the government did not file, and thus the court did not consider, a § 5K1.1 motion.

Regardless of whether the reasoning of such cases applies outside of the context of a sentencing court's consideration of a § 5K1.1 motion, it is clear that sentencing courts cannot consider the potential for a future sentence reduction in imposing sentence. *See United States v. Drown*, 942 F.2d 55, 59 (1st Cir. 1992) ("Imposition of a heavy sentence greater than would otherwise be warranted, on the theory that it will be reduced pursuant to Rule 35 . . . if the defendant cooperates in the future investigations, is not appropriate."). Further, sentencing the defendant to a particular term of imprisonment because the sentence later might be reduced is inconsistent with the purpose of Rule 35(b), which permits a court to reward a defendant with a lower sentence based on the defendant's *post-sentencing* cooperation. Thus, if the district court in this case considered the government's intention to file a Rule 35(b) motion in imposing sentence—by, for example, imposing a higher sentence than it would have in the absence of the government's stated intention—Recla's sentence is unreasonable, and we must remand for resentencing.

---

[1] Under § 5K1.1, "a sentencing judge may sentence a defendant below the applicable guideline range if the defendant has provided substantial assistance in the investigation and prosecution of others." *Ridge*, 329 F.3d at 541 (citing USSG § 5K1.1). Motions under § 5K1.1 generally are considered during a defendant's sentencing hearing, while a sentencing court considers a Rule 35(b) motion after the original sentencing. *See id.*

In announcing sentence, the district court stated that Recla's sentence "will be imposed *with the understanding that there probably will be subsequent motions filed subsequently* [sic]." (J.A. 58) (emphasis added). Relying on this statement, Recla argues that his sentence is unreasonable. In response, the government argues that, in the context of the entire record, the court's "passing reference to the possibility of future sentence reduction motions simply does not indicate that the . . . sentence was impacted by the possibility of a motion under Rule 35(b)." (Appellee Br. 19.)

At the beginning of the sentencing hearing, defense counsel informed the court that Recla had testified before a grand jury pursuant to his cooperation agreement with the government and that he "[was] anticipating in the future a Rule 35." (J.A. 48.) Defense counsel "wanted to make it clear that . . . Mr. Recla has been cooperative up to this point and at least the Rule 35 is under consideration once indictments are returned." (J.A. 48-49.) The court then questioned the government regarding its intentions with respect to Recla's cooperation. The government informed the court that the issue of cooperation was "primarily left for another day . . . . [T]he United States is considering a post-sentencing Rule 35 motion based on future cooperation . . . . [A]ny action taken by the government would be in a Rule 35 context." (J.A. 50.) Following the government's statement, the sentencing judge indicated that he "understood." (J.A. 50.) The only other reference to Rule 35(b) occurred in the context of the judge's announcement of Recla's sentence.[2]

The record is ambiguous as to whether, in imposing sentence, the district court considered the government's intention to file a motion under Rule 35(b) to reduce Recla's sentence. However, several factors support a finding that the district court's sentence stemmed, at least in part, from this consideration. First, the district court's sentence was at the high end of the Guidelines range of fifty-seven to seventy-one months. Although the PSR concluded that a sixty-four-month sentence was appropriate, the sentencing judge imposed a seventy-month term of imprisonment. Further, the

---

[2]Although the district judge did not mention Rule 35(b) explicitly in announcing sentence, the only "future motion[]" discussed during the sentencing hearing was a motion under Rule 35(b). On appeal, the government does not dispute that the district judge's statement referred to a Rule 35(b) motion.

district court stated that he was imposing this sentence "with the understanding" that future motions might be filed by the government. While the government argues that a "passing reference to a future Rule 35(b) motion" does not render the sentence unreasonable, the district court's statement is not simply a "passing reference." Instead, the statement occurs in the context of the district court's announcement of sentence in which he summarizes the factors that he considered:

> It will be the sentence of this Court based upon the entire review of the presentence report, the entire review of the fine sentencing report, the entire review of the guilty plea, that a 70-month sentence in the Federal Bureau of Prisons will be imposed with the understanding that there probably will be subsequent motions filed subsequently [sic], with four recommendations to the Bureau of Prisons.

(J.A. 58.)

While certain factors suggest the district court considered the government's intention to file a Rule 35(b) motion in determining Recla's sentence, ultimately, the record does not disclose the extent to which the possibility of the government filing a Rule 35(b) motion influenced the district court's sentencing decision—if it influenced it at all. Accordingly, we cannot "conclude on the record before us that the district court would have imposed the same . . . sentence" in the absence of this influence. *Keller*, 498 F.3d at 325. We therefore vacate Recla's sentence and remand to the district court for resentencing. On remand, the district court should clarify whether the government's intention to seek a sentence reduction under Rule 35(b) influenced its sentencing decision, and determine whether the sentence should be modified in light of its conclusion.

## II.     PROCEDURAL REASONABLENESS

Recla also challenges the procedural reasonableness of his sentence. He argues that, because the district court "did not address at all or even acknowledge the issue regarding the time [he] spent in state custody," the district court failed to adequately explain his sentencing decision and the sentence therefore is procedurally unreasonable. This Court has established that "[w]here a defendant raises a particular argument in

seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006).

The Supreme Court similarly has emphasized the need for district courts to explain their sentencing decisions. In *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456 (2007), the Supreme Court concluded that "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.* at 2468. While a "lengthy explanation" might not be required "when a judge decides simply to apply the Guidelines to a particular case, . . . . [w]here the defendant . . . presents nonfrivolous reasons for imposing a different sentence, . . . the judge will normally go further and explain why he has rejected those arguments." *Id.* The Court reiterated these principles in its subsequent decision in *Gall*. *Gall* instructed appellate courts to "ensure that the district court committed no significant procedural error," including "failing to adequately explain the chosen sentence." *Gall*, 128 S. Ct. at 597. In particular, the Court stated that, "[a]fter settling on the appropriate sentence, [the district judge] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.*

In the sentencing memorandum and during the sentencing hearing, defense counsel raised the argument that the district court should reduce Recla's sentence based on the time that Recla served in state custody awaiting trial on state charges because the Bureau of Prisons would not take that time into account in calculating Recla's sentence. Defense counsel noted that federal authorities interviewed Recla while he was in state custody, and that Recla entered into his plea agreement in September of 2006, before his transfer to federal custody on October 26, 2006.

A district court must consider the advisory Guidelines range and all relevant factors identified in 18 U.S.C. § 3553(a). *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006). Recla's argument is relevant under both § 3553(a)(2)(A), which requires a court to consider whether the sentence would be just punishment for the offense, as well

as § 3553(a)(2)(B), directing a sentencing court to consider the need for adequate deterrence. *See id.* at 869 n.5. Thus, Recla's argument that his sentence should be reduced to account for time spent in state custody presents a valid basis for reducing his sentence and, therefore, is not frivolous. *See United States v. Sylvester*, 289 F. App'x 860, 865-66 (6th Cir. 2008) (considering a challenge to the procedural reasonableness of the defendant's sentence based on the district court's asserted failure to consider the time that the defendant had spent in state custody as a mitigating factor).

The parties appear to agree that the district court did not, at any point during the sentencing hearing, explicitly refer to or discuss Recla's argument regarding time served while in state custody as a reason to reduce his sentence. The district court did explain its reasons for rejecting Recla's primary argument for a reduced sentence—that Recla's history of drug use stemmed from a hunting accident he suffered as a teenager—stating that it could not "quite buy the hunting accident when he was a teenager giving rise to his helplessness as a result of drug addiction." (J.A. 56.) In addition, to the extent Recla argued that his cooperation with the government warranted a lower sentence, the court acknowledged that he had cooperated with the government's investigation. However, the district court failed to mention or otherwise acknowledge Recla's argument that his sentence should be reduced based on the time he spent in state custody. The government argues that the fact that the judge "noted that he had reviewed [Recla]'s sentencing memorandum, in which [Recla] raised this argument" demonstrates that the court considered the argument. (Appellee Br. 16.) As a result, according to the government, "[t]here is no reason to believe that the district court simply missed this part of the memorandum." (*Id.*)

We disagree with the government that the district court's reference to the sentencing memorandum indicates that the district court "considered" the argument. The omission of an explanation for rejecting one of Recla's nonfrivolous arguments for a reduction in his sentence failed to "assure[] not only that the defendant can understand the basis for the particular sentence but also that the reviewing court can intelligently determine whether the specific sentence is indeed reasonable." *Richardson*, 437 F.3d 550. However, because we remand to the district court based on its potential error in

considering the government's intention to file a Rule 35(b) motion in imposing sentence, we do not reach the issue of whether Recla's sentence is unreasonable. *See United States v. Driver*, 535 F.3d 424, 433 n.3 (6th Cir. 2008). Nonetheless, we emphasize that the better practice is for district judges to articulate the reasons, "even if brief," for rejecting a defendant's nonfrivolous arguments in favor of a reduced sentence. *See Rita*, 127 S.Ct. at 2469. Accordingly, the district court on remand will undoubtedly wish to address Recla's argument that his sentence should be reduced to take into account the time he spent in state custody.

### III.     SUBSTANTIVE REASONABLENESS

In evaluating substantive reasonableness, the Court examines whether the length of the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing as set forth by Congress in the sentencing statute. *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006). Thus, "[t]he touchstone for our review is whether the length of the sentence is reasonable in light of the § 3553(a) factors." *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008). A sentence is substantively unreasonable where the district court "select[ed] the sentence arbitrarily, bas[ed] the sentence on impermissible factors, . . . or [gave] an unreasonable amount of weight to any pertinent factor." *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005). In reviewing a sentence on appeal, this Circuit applies a rebuttable presumption of reasonableness to sentences that are within a properly calculated Guidelines range. *United States v. Alexander*, 543 F.3d 819, 822 (6th Cir. 2008); *see also Gall*, 128 S. Ct. at 597 ("If the sentence is within the Guidelines range, the appellate court may . . . apply a presumption of reasonableness."). A within-Guidelines sentence, however, is not "'per-se reasonable.'" *Richardson*, 437 F.3d at 554 n.2 (quoting *Webb*, 403 F.3d at 385 n.9).

Recla argues that his sentence is substantively unreasonable because the length of his sentence was "too severe." First, Recla argues that, because the district court failed to consider his argument that he should receive a lower sentence to account for the time he spent in state custody, the sentence is too long. Recla also contends that his

sentence is too severe, and therefore substantively unreasonable, because the district court considered the possibility that a future Rule 35(b) motion would reduce his sentence.

Because we remand to the district court so that this Court can meaningfully review on appeal whether the district court considered an improper factor in imposing sentence, we do not reach the issue of whether Recla's sentence is substantively unreasonable. *See Driver*, 535 F.3d at 433 n.3.

## CONCLUSION

For the reasons set forth above, we **VACATE** Recla's sentence and **REMAND** the case for resentencing consistent with this opinion.