**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0656n.06

No. 09-2007

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Oct 25, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| JERRY DEAN BYARS, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| _____ | ) | |

Before:  BOGGS, SILER, and MOORE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  Defendant-Appellant Jerry Dean Byars

appeals his sentence of ninety-seven months of imprisonment following his plea of guilty to one

count of receiving images of minors engaged in sexually explicit conduct.  Byars argues that his

sentence was procedurally unreasonable because the district court failed to consider and respond to

his arguments in favor of a variance.  For the reasons stated below, we **AFFIRM** Byars's sentence.

**I.  BACKGROUND**

On September 23, 2008, Byars was indicted on one count of receiving images of minors

engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2) and one count of

possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  Byars subsequently

entered into a plea agreement under which he agreed to plead guilty to the first count.  The

government, in return, agreed to dismiss the second count, to refrain from opposing any reduction

in Byars's Guidelines offense level pursuant to § 3E1.1(a) of the U.S. Sentencing Guidelines ("U.S.S.G."), and to move for an additional reduction pursuant to § 3E1.1(b) should the court grant the § 3E1.1(a) reduction. There was no agreement, however, as to the final Guidelines sentencing range.

A Presentence Investigation Report ("PSR") determined that Byars's offense level was thirty. The PSR further noted that Byars had a prior state conviction in 2000 for "Disorderly Person-Obscene Conduct" that stemmed from an incident in which he allegedly exposed himself to a nine-year-old girl. PSR at ¶ 68. The PSR assigned Byars a criminal history category of I, which resulted in a Guidelines range of 97 to 121 months of imprisonment.

Byars's attorney filed a sentencing memorandum requesting a variance. In that memorandum, Byars's attorney drew attention to Byars's past community service, which purportedly included activities such as delivering Christmas baskets to needy families and even rescuing an elderly woman from a burning building. Several letters were attached that further attested to Byars's service. The memorandum also focused upon Byars's failing health and his age. Finally, in the memorandum, Byars's attorney criticized the Guidelines as a whole and the manner in which they treat child-pornography offenses. In particular, he argued that the relevant provisions had no empirical basis and failed to distinguish between "real predators" and those who merely viewed child pornography. Doc. 38 (Def.'s Sent. Mem. at 6). In support of this argument, Byars's attorney attached an ABA Journal article and noted other cases in which district judges had granted variances for similar reasons.

2

The government opposed the variance and responded by emphasizing Byars's prior conviction, his use of an adolescent "persona" while searching for pornography online, and the fact that Byars continued collecting child pornography even after police seized his computer in 2005. The government also noted that, according to the PSR, while out on bond, Byars allegedly tried to choke another individual in a half-way house and allegedly violated the terms of his release by "seeking out" individuals who appeared to be minors and "engaging [them] in conversation." PSR at ¶ 14.

The district court held a sentencing hearing on July 21, 2009. The district judge began by noting that he had "taken some time to read the various letters . . . attached to the sentencing [memorandum] which bespeak Mr. Byars' connections in his community." Dist. Ct. Doc. 45 (Sent. Hr'g Tr. (7/21/2009) at 4). Byars's attorney proceeded to argue for a variance, and in doing so he tried to address some of the conduct to which the government had pointed in its memorandum while also emphasizing, among other things, Byars's community service. Byars's attorney also observed that "people who've robbed banks . . . don't get this kind of sentence," *id.* at 7, which prompted the following dialogue with the court:

> The Court: "[Y]ou're quarelling essentially with [the] sentenc[ing] guidelines and with the Congress and the statute, aren't you?"
>
> [Byars's attorney]: "I am. I am, Your Honor, and I think our memo is fairly clear about that, and we seek a variance because of that."
>
> The Court: "But is there not . . . a troubling conviction in the year 2000?"

*Id.* Byars's attorney acknowledged that there was such a conviction and proceeded to downplay its significance. Byars's attorney again noted Byars's community service, age, and poor health, and argued that Byars was not a threat to the community.

The court then gave Byars an opportunity to speak. During that time, Byars remarked that "time's running out for me. I have about three years left before this body disintegrates, and I would like to contribute a little bit more to society before it does." *Id.* at 12. The court replied by noting that Byars was sixty-six years old and then stated that "[w]ell, I don't know quite how to say this to you, Mr. Byars, but you're not that old." *Id.* The court proceeded to ask Byars a series of questions, focusing particularly upon Byars's past conviction and the fact that Byars continued his conduct even after police seized his computer.

The district court then imposed a sentence of ninety-seven months of imprisonment, the bottom of the Guidelines sentencing range. In doing so, it noted that although Byars had a criminal history category of only I, he nonetheless had an obscene-conduct conviction "that bears a similarity to this behavior that is troubling to this Court." *Id.* at 18. The court was also troubled by the fact that Byars continued collecting child pornography even after his computer was seized in 2005. The court further remarked that Byars committed a "serious offense" that "require[d] the promotion of respect for law," *id.*, and that "a just punishment require[d] that some kind of an adequate deterrence be meted out in this matter to protect the public," *id.* at 18-19. Finally, the court stated that it "believe[d] that the defendant[ was] in need of not only medical, but correctional treatment in this matter." *Id.* at 19. In addition to the prison sentence, the court also recommended that Byars "be

4

evaluated for the plethora of medical needs that he has" and that he receive sexual-offender and mental-health treatment. *Id*. Byars now appeals.

## II. ANALYSIS

### A. Standard of Review

Normally, "[w]e review the district court's sentence under an abuse-of-discretion standard." *United States v. Barahona-Montenegro*, 565 F.3d 980, 983 (6th Cir. 2009). The government, however, argues that in this case, we should review the district court's sentence only for plain error. Because we would uphold Byars's sentence under either standard of review, we decline to resolve this issue, and assume that abuse-of-discretion review is the appropriate standard.

### B. Procedural Reasonableness

On appeal, Byars argues that his sentence is procedurally unreasonable. In determining whether a sentence is procedurally reasonable,

> [w]e must ensure that the district court (1) properly calculated the applicable advisory Guidelines range; (2) considered the § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the chosen sentence, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range.

*United States v. Petrus*, 588 F.3d 347, 351-52 (6th Cir. 2009). Byars focuses primarily upon the second and third prongs of this analysis, arguing that the district court failed to consider Byars's arguments in favor of a variance and failed to explain adequately its bases for rejecting those arguments.

As the Supreme Court explained in *Rita v. United States*, 551 U.S. 338 (2007), "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 551 U.S. at 356. A district court has some discretion in deciding how much explanation to provide. *Id.* Nonetheless, *Rita* stated that "[w]here the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence . . . the judge will normally . . . explain why he has rejected those arguments." *Id.* at 357. This court has also emphasized that "[w]here a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Recla*, 560 F.3d 539, 547 (6th Cir. 2009) (internal quotation marks omitted). When a defendant raises a "conceptually simple" argument, however, a district court is permitted to provide less explanation than might otherwise be necessary. *Rita*, 551 U.S. at 359.

Byars first argues that the district court did not adequately explain why Byars's old age and poor health did not warrant a variance. The record, however, does not support this claim. As for Byars's claim that he was old, the district court simply disagreed and told Byars that he was "not that old." Doc. 45 (Sent. Hr'g Tr. (7/21/09) at 12). Furthermore, it is clear from the record that the district court considered Byars's poor health, cited Byars's need for medical treatment as one of its rationales for the sentence it chose, and recommended that Byars receive a medical evaluation once in custody. When a district court's sentence is crafted in such a way that it explicitly accommodates factors to which the defendant has drawn attention, it is difficult to claim that the district court failed

to respond to those factors. *See United States v. Liou*, 491 F.3d 334, 340 (6th Cir. 2007) (holding that district court adequately responded to the defendant's emphasis on his family circumstances when the district court gave the defendant sixty days to self-report in order to accommodate those circumstances).

Byars further argues that the district court erred in not responding to his categorical challenge to the treatment by the Guidelines of child-pornography defendants. During the sentencing hearing, however, the court confirmed that Byars was "quarreling essentially with [the] sentencing guidelines," and then replied by noting Byars's "troubling" 2000 conviction for obscene conduct. Doc. 45 (Sent. Hr'g Tr. (7/21/09) at 7). Byars argues that the district court simply "changed the subject," Reply Br. at 6, but this is incorrect. Byars essentially argued that it was unjust to treat a mere "voyeur" of child pornography in such a harsh manner. Doc. 38 (Def.'s Sent. Mem. at 6). As the government correctly observes, the district judge, by emphasizing Byars's previous conviction, indicated that Byars was not merely a viewer of child pornography, and therefore the district judge did not believe a variance to be appropriate. The district court could have stated its reasoning more explicitly, but its failure to do so does not necessitate reversal in light of the court's specific reference to Byars's previous conduct-based conviction and also to his repeated receipt of child pornography even after the seizure of his computer by law-enforcement officials.

Finally, Byars argues that the district court did not give adequate attention to his past community service. We agree that, ideally, the district judge should have offered a more thorough explanation of its reasoning for finding Byars's community service uncompelling. Not only was

Byars's community service commendable, but also his rescue of a woman from a burning building appeared heroic. Nonetheless, the district judge stated that it had read the letters attached to Byars's sentencing memorandum and acknowledged that those letters "bespeak Mr. Byars' connections in his community." Doc. 45 (Sent. Hr'g Tr. ( 7/21/09) at 4). This indicates that the district judge considered Byars's past good works. Although our precedents would normally require more explanation for the district court's denial of a variance, we agree with the government that Byars's arguments with respect to his community service were "conceptually simple," *Rita*, 551 U.S. at 356, and therefore did not necessitate a more elaborate explanation. The analysis remained quite simple: either the district court found that Byars's positive deeds outweighed the other negative factors in his record or it did not. Indeed, Byars's past community service is quite similar to the defendant's decorated military service in *Rita*, which the Court also deemed to be "conceptually simple." 551 U.S. at 358-59. Given that the district court expressly acknowledged reading letters referencing Byars's community service and also emphasized both Byars's prior conviction and his repeated possession of child pornography, it is clear from the record that the district court simply concluded that Byars's community service could not overcome his prior misconduct. Under such circumstances, we do not think the district judge was required to speak "more extensively." *Rita*, 551 U.S. at 359.

Therefore, we conclude that the district court did not commit reversible procedural error. We reiterate once more, however, that the "better practice" is for the district court to address explicitly all non-frivolous arguments. *Petrus*, 588 F.3d at 353. Doing so will prevent unnecessary litigation.

### III.  CONCLUSION

For the reasons stated above, we **AFFIRM** Byars's sentence.