NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0128n.06

No. 22-3973

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>January 31, 2024<br>KELLY L. STEPHENS, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| KEVIN MANUEL SANTIAGO, | ) | |
| Defendant-Appellant. | ) | |
| | ) | UNSEALED OPINION* |

Before: GRIFFIN, BUSH, LARSEN, Circuit Judges.

JOHN K. BUSH, Circuit Judge. Kevin Santiago received a 135-month prison sentence after pleading guilty to four charges related to his drug-trafficking activities. On appeal, he challenges the district court's denial of his request to continue his sentencing hearing and the district court's application of a sentencing enhancement for his role in the offense. For reasons that follow, we **AFFIRM**.

**I.**

On April 15, 2021, a federal grand jury indicted Santiago on one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A); and three counts of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Santiago was arrested in Puerto Rico five days later and brought before

---

*This decision was originally filed under seal on January 31, 2024 in tandem with an order allowing any party to the appeal to file a motion to redact. Seeing as no party to the appeal filed a motion to redact, the court unsealed the opinion on March 18, 2024. The date the opinion is deemed to have been filed remains January 31, 2024.

the United States District Court for the Northern District of Ohio. He pleaded guilty to all four counts pursuant to a written plea agreement on January 5, 2022.

Before the district court, Santiago confirmed that he reviewed and understood his plea agreement at his change-of-plea hearing on January 5, 2022. When the district court asked if he was willing to sign a separate addendum agreeing to cooperate with the government, he explained that he had received the addendum from his attorney and "was not in agreement with that one." Plea Hr'g Tr., R. 262, PageID 1463. The district court accepted the plea agreement and scheduled Santiago's sentencing hearing for April 27, 2022.

One week before his originally scheduled sentencing hearing, Santiago filed a pro se motion asking the court to appoint him Spanish-speaking counsel and to continue his sentencing hearing. The district court granted the motion and, after a status conference with Santiago's newly appointed counsel, rescheduled the hearing for September 13, 2022. Counsel filed a second motion to continue six days before the September hearing, explaining that he needed an additional 45 days to obtain discovery and review it with Santiago. The district court granted that motion and rescheduled Santiago's hearing for November 10, 2022.

Then, counsel requested a third continuance on the day before Santiago's sentencing hearing, explaining that he needed more time to review discovery and confer with his client. The district court denied the motion. Counsel explained at the hearing that Santiago had agreed to cooperate with the government, and that a continuance was needed so that the defendant could meet with agents traveling from Puerto Rico to provide information that would aid in their investigation. The district court explained that it denied Santiago's request for a continuance for three reasons: first, it determined that Santiago was not entitled to an additional continuance to allow for his cooperation because he had not provided information sooner despite being in custody

for over a year. Second, the court explained that if the defendant cooperated with law enforcement after he was sentenced, the government could move to reduce his sentence under Federal Rule of Criminal Procedure 35(b). Third, the court determined that safety concerns supported denying the motion: the Marshals Service reported that Santiago was found with a cellphone in his cell, suggesting that the defendant was contacting coconspirators.

As to Santiago's sentence, the probation office recommended enhancing Santiago's base offense level under U.S.S.G. § 3B1.1(a) to account for his leadership role in the drug conspiracy. According to the Presentence Investigation Report (PSR), Santiago was "one of the leaders of the drug trafficking organization." PSR, R. 188, PageID 1010. Specifically, the PSR explained that "[f]rom as early as February 2019 until mid-February 2020, [Santiago] sent or directed the shipment of 22 packages containing between 500 grams and 2 kilograms of cocaine from Puerto Rico to the Northern District of Ohio." *Id.* Santiago coordinated the deliveries of drugs and drug proceeds by providing addresses and tracking numbers to intermediaries.

The district court followed the probation office's recommendation and applied the enhancement over Santiago's objection. The court explained that the objection was untimely, but that in any event, the PSR's account of the facts clearly demonstrated that Santiago acted as a leader or organizer when he "sent or directed [at least 22 shipments] from Puerto Rico to Cleveland." Sentencing Hr'g Tr., R. 263, PageID 1486, 1488. The district court then calculated a guidelines range of 135 to 168 months' imprisonment. After considering the sentencing factors under 18 U.S.C. § 3553(a), the court ultimately imposed a 135-month prison sentence, followed by a five-year term of supervised release. Santiago timely appealed.

## II.

### A. Motion to Continue

On appeal, Santiago claims that the district court erred when it denied his motion to continue his sentencing hearing. We review the district court's denial of a motion to continue for an abuse of discretion. *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003). When determining whether a district court abused its discretion in denying a motion for a continuance, we consider the totality of the circumstances and look at the following factors:

> [1] the length of the requested delay; [2] whether other continuances had been requested and granted; [3] the convenience or inconvenience to the parties, witnesses, counsel and the court; [4] whether the delay was for legitimate reasons or whether it was "dilatory, purposeful or contrived;" [5] whether the defendant contributed to the circumstances giving rise to the request; [6] whether denying the continuance will result in identifiable prejudice to defendant's case; and [7] the complexity of the case.

*Id.* at 396 (quoting *United States v. Burton*, 584 F.2d 485, 490–91 (D.C. Cir. 1978)). For the denial to constitute reversible error, the defendant must show that the denial resulted in actual prejudice. *United States v. Lewis,* 605 F.3d 395, 401 (6th Cir. 2010).

Here, at least four of the seven *Powell* factors weigh against granting Santiago's motion. The second factor, "whether other continuances had been requested and granted," supported the district court's denial because the court had already granted two of Santiago's previous requests to continue his sentencing hearing. And because defense counsel filed the motion to continue the day before the hearing was scheduled, the third factor also favored denying the motion to avoid inconvenience to the parties, the district court, and court personnel, such as the interpreter who had been scheduled in advance.

Under the fifth factor, "whether the defendant contributed to the circumstances giving rise to the request," the defendant arguably contributed to the delay when he decided to speak with the government despite previously stating that he was not interested in cooperating. Santiago argues the opposite, claiming that his desire to cooperate constitutes a legitimate reason for a continuance and that he should not be faulted for government agents' delayed arrival from Puerto Rico.

Santiago is correct that he may change his mind at any time during criminal proceedings as to whether he wishes to cooperate with the government. And he is also correct that he is not to blame for the agents' unavailability on November 10, 2022, the date of his sentencing hearing.

However, simply because he could decide to cooperate with the government at any time does not mean that he is entitled to unlimited continuances to accommodate his decision. As the district court explained, the timeliness of a defendant's assistance is "[o]ne of the key elements" in assessing the value of his cooperation. Sentencing Hr'g Tr., R. 263, PageID 1479; *see* U.S.S.G. § 5K1.1(a)(5) (noting that courts consider, among other things, the "timeliness of the defendant's assistance" in determining whether to grant the government's motion for a downward departure for substantial assistance). Here, Santiago refused to speak with agents during the months that he was in custody, he expressly stated at his change-of-plea hearing that he did not wish to cooperate with the government, and he first informed the district court that he had changed his mind at his sentencing hearing. Accordingly, the district court did not err in concluding that Santiago's delayed choice to cooperate, even if genuine, did not warrant granting his request to continue.

Finally, Santiago has not made a sufficient showing under the sixth factor, "whether denying the continuance will result in identifiable prejudice to defendant's case," because he has not demonstrated the continuance would have "added something" to his position at sentencing. *United States v. King*, 127 F.3d 483, 487 (6th Cir. 1997). Santiago claims that, if given more time to speak with government agents, he would have been eligible for safety-valve relief under 18 U.S.C. § 3553(f), which would have authorized the district court to impose a sentence below the 120-month statutory minimum. He also argues that the government likely would have filed a motion for a downward departure under U.S.S.G. § 5K1.1 if he had been granted more time to provide substantial assistance prior to his hearing.

As an initial matter, it is unlikely that Santiago would have qualified for safety-valve relief even if he had provided information to government agents before his hearing. To qualify for a safety-valve reduction, a defendant must satisfy five factors, including that he was "not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines," and that "not later than the time of the sentencing hearing," he has "truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses." 18 U.S.C. § 3553(f)(4), (5). Because Santiago was properly deemed an organizer or leader of a drug conspiracy under U.S.S.G. § 3B1.1(a), as discussed below, he would not have been eligible for safety-valve relief even if he had provided information to the government before his hearing. *See, e.g., United States v. Gaxiola*, 414 F. App'x 889, 891 (8th Cir. 2011) (holding that application of leadership enhancement precluded defendant from enjoying safety-valve relief).

Additionally, Santiago's argument regarding a prospective § 5K1.1 motion does not sufficiently establish prejudice because (1) it is unlikely that even if the government had filed a § 5K1.1 motion, the district court would have granted it in light of his delayed cooperation, and (2) contrary to Santiago's view, it was not improper for the district court to consider the availability of a Rule 35(b) motion. To the first point, § 5K1.1 provides that, "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S.S.G. § 5K1.1. Courts consider five factors in deciding whether to grant a downward departure based on the defendant's substantial assistance, including "the court's evaluation of the significance and usefulness of the defendant's assistance" and "the timeliness of the defendant's assistance." *Id.* § 5K1.1(a)(1), (5). Here, although the government did not file a

§ 5K1.1 motion, the district court addressed similar factors when it reasoned that Santiago's intention to cooperate would not warrant continuing his hearing because his cooperation was untimely and any information he provided would likely be stale. Accordingly, he has not shown that even if the government had filed a § 5K1.1 motion, it would have positively impacted his sentence.

To the second point, the district court correctly recognized that the government could seek to reduce Santiago's sentence after it was imposed by filing a motion under Rule 35(b) of the Federal Rules of Criminal Procedure. Under Rule 35(b), the government may move within one year of sentencing to reduce a defendant's sentence if he provides substantial assistance. Fed. R. Crim. P. 35(b). Santiago claims that the court's reliance on Rule 35(b) was improper, stating that courts may not consider the prospect of a reduction motion when calculating a sentence. He cites *United States v. Recla*, 560 F.3d 539 (6th Cir. 2009), for that proposition. In *Recla*, we held that a district court improperly relied on a Rule 35(b) motion when it explained that it was imposing a higher sentence with the expectation that the government would subsequently move for a reduction under the Rule. *Id.* at 545–47.

Santiago is correct that district courts may not impose higher sentences based on the understanding that post-sentencing motions for a reduction may be filed after the fact. *See id.* at 546; *United States v. Gapinski*, 561 F.3d 467, 477 (6th Cir. 2009) (vacating a sentence where district court relied on the possibility of a Rule 35(b) motion in considering the government's § 5K1.1 motion); *United States v. Bureau*, 52 F.3d 584, 595 (6th Cir. 1995) (same). Here, however, the district court did not consider prospective relief under Rule 35 when calculating Santiago's sentence, but as one of the reasons factoring into its decision to deny his motion to continue. *See* Sentencing Tr., R. 263, PageID 1479–80. Indeed, the government correctly notes

that the district court did not mention Rule 35 at any time when discussing why a 135-month sentence was appropriate under the guidelines and under 18 U.S.C. § 3553(a). *Cf. United States v. Coleman*, 652 F. App'x 442, 447 (6th Cir. 2016) (district court's mention of the defendant's history of fathering children out of wedlock was not improper because the comment was not made "at the point in the hearing when it explained its chosen sentence"). Accordingly, the district court's mention of Rule 35(b) was proper, and Santiago could benefit under that Rule if he cooperated with the government after his sentencing hearing.

Finally, Santiago claims that the denial of his motion prejudiced his case because he was unable to properly challenge the leadership enhancement under U.S.S.G. § 3B1.1(a). He claims that if given the opportunity, he could have provided information about the "structure of the narcotics operation [] in Puerto Rico" and explained the "small role he played in the overall scheme." Appellant's Br., at p. 22. However, Santiago failed to establish how meeting with the government would have dissuaded the district court from applying the enhancement. The government correctly notes that it is the court, not the government, who determines whether to apply a leadership enhancement. And nothing prevented Santiago from explaining his limited role in the conspiracy directly to the court at his sentencing hearing. Moreover, informing the government of his small role in the conspiracy would have no impact here, because the government already agreed not to apply the leadership enhancement in Santiago's plea agreement. Thus, Santiago did not demonstrate that the outcome of his case would have differed if the court had granted his motion to continue.

**B. Leadership Enhancement**

Santiago also challenges the district court's application of a leadership enhancement under U.S.S.G. § 3B1.1(a). A defendant's guidelines sentence may be enhanced by four levels if he was

an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). We review the district court's determination that a defendant was an organizer or leader under § 3B1.1 deferentially, "in light of the fact bound nature of the legal decision." *United States v. Washington*, 715 F.3d 975, 983 (6th Cir. 2013) (citing *Buford v. United States*, 532 U.S. 59, 66 (2001)).

In determining whether to apply a § 3B1.1 enhancement, courts consider factors such as "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, cmt. 4. Notably, a conspiracy can have multiple leaders or organizers, and the enhancement applies if the defendant managed "one of the five or more other participants." *United States v. Robinson*, 503 F.3d 522, 529 (6th Cir. 2007).

The district court relied on the PSR's recitation of the facts as justification for applying the leadership enhancement. Because Santiago did not object to those facts, the court was entitled to accept them as true. *See United States v. Levy*, 250 F.3d 1015, 1018 (6th Cir.2001). The PSR provides that Santiago acted in a managerial role when he "sent or directed the shipment of 22 packages containing between 500 grams and 2 kilograms of cocaine" between Puerto Rico and Ohio. PSR, R. 188, PageID 1010. Specifically, the PSR states that Santiago directed others by sending tracking numbers of drug parcels that were sent to co-conspirators. *Id.* And the PSR relays that, in November 2019, Santiago managed a cash transfer by providing the nickname and contact information of a person receiving drug proceeds to Ortiz Cruz, who sent his mother to

deliver the proceeds. *Id.* at 1010–11. When Cruz's mother could not contact the cash recipient, Santiago attempted to call the recipient and sent Ortiz Cruz a new delivery address. *Id.*

Santiago does not dispute the facts included in the PSR, but instead claims that those facts do not support the enhancement because they do not show that he had any "monetary advantage" or exercised "actual authority over anyone." Appellant's Br., at p. 26. However, a "district court need not find each factor in order to warrant an enhancement" under § 3B1.1. *United States v. Castilla-Lugo*, 699 F.3d 454, 460 (6th Cir. 2012). The PSR indicates that Santiago exercised control over his coconspirators when he directed their deliveries. It further shows that by directing the shipment of at least 22 packages and providing tracking numbers to various participants, his participation in planning the conspiracy was extensive. Based on the undisputed facts contained in Santiago's PSR, the district court did not err in applying the leadership enhancement to Santiago's sentence.

## III.

For the foregoing reasons, we **AFFIRM**.