NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0340n.06

No. 14-2391

**FILED**
Jun 21, 2016
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff-Appellee | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| EARL ZHIVAGO COLEMAN | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant | ) | |
| | ) | |
| | ) | |

BEFORE:     BOGGS, ROGERS, and STRANCH, Circuit Judges.

ROGERS, Circuit Judge.  Earl Coleman challenges his 248-month sentence for federal drug and gun violations.  Coleman argues that a three-level aggravating-role enhancement under U.S.S.G. § 3B1.1(b) was applied in error because there were fewer than five participants in his criminal activities.  Coleman also contends that his sentence was substantively unreasonable because the district court, in determining Coleman's sentence, relied on the fact that he fathered children out of wedlock.  The Government in turn argues that Coleman waived, via plea agreement, his ability to challenge his sentence on direct appeal.  The district court did not clearly err in finding that Coleman's criminal activity involved at least five participants.  The court also did not base Coleman's sentence on his having fathered children out of wedlock.  Accordingly, even if Coleman did not waive his right to appeal his sentence, his sentencing arguments fail on the merits.  Coleman's arguments therefore do not provide a basis for relief.

In 2013, law enforcement began investigating the heroin trafficking activities of Coleman and his supplier, Quincy Williams. Confidential informants told law enforcement that Williams was a drug trafficker who had relocated from Kalamazoo, Michigan to Chicago, Illinois.

In January of 2014, law enforcement officers observed two people, who turned out to be Coleman and his drug runner, Shawn Clark, leave Coleman's known stash house at 715 Fairbanks in Kalamazoo, enter a vehicle, and exit the area. After Clark, the driver of the vehicle, committed a traffic violation, the officers stopped the vehicle. Officers searched both Clark and Coleman. After finding heroin on both Clark and Coleman, the officers placed both men under arrest.

Law enforcement also obtained a warrant to search Coleman's stash house at 715 Fairbanks. An individual named Cynthia Abrams was inside the residence at the time of the search. Abrams told the law enforcement that she had a dating history with Coleman, slept at the residence, and was a heroin user. During the search of the residence, investigators located and seized heroin, digital scales, drug paraphernalia, and a loaded Glock semiautomatic pistol.

Later, at the Kalamazoo County Jail, Coleman told law enforcement that he had been traveling to Chicago to obtain heroin from Williams for several months. Coleman identified Clark and an individual named Jerry White as runners who sold heroin for him in exchange for personal quantities of the drug. Coleman also stated that he had purchased—for protection—the Glock pistol that law enforcement had found in the stash house.

Clark provided a proffer statement to assist law enforcement. In this statement, Clark claimed that he drove Coleman to Chicago on at least nine occasions between September 2013 and late January 2014. Clark also stated that "two different females, namely 'Peaches' and Cynthia Abrams, accompanied" him and Coleman to Chicago to obtain heroin from Williams.

According to Clark, once they returned to Kalamazoo, Coleman would arrange heroin deliveries and purchases and would collect money from sales. Clark also stated that he "was always the driver for the deliveries" and that Coleman had White "do most of the hand-to-hand deliveries."

A grand jury charged Coleman with four offenses: (1) conspiring to traffic heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(i) (count one); (2) possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (count two); (3) possession of a firearm in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (count three); and (4) being a felon in possession of a fireman, in violation of 18 U.S.C. § 922(g)(1) (count four).

Law enforcement authorities arrested Williams in Chicago in April of 2014. Williams told law enforcement that he supplied Coleman with heroin between 2013 and January 2014. Williams also said that Coleman, in addition to using Clark to drive him to and from Chicago to pick up heroin, used three other individuals to assist him with distributing heroin in Kalamazoo. Williams also identified his own heroin supplier.

Coleman subsequently pled guilty to counts two and three, pursuant to a written plea agreement, in exchange for the Government's promise to move to dismiss counts one and four.

Following Coleman's guilty plea, the United States Probation Office conducted a presentence investigation of Coleman and the offense conduct. In the final presentence report, the probation officer recommended applying a three-level aggravating role enhancement under U.S.S.G. § 3B1.1(b) based on Coleman's involvement as a "manager or supervisor of a criminal activity involving five or more participants."

The probation officer also stated that, based on a total offense level of 34 and a criminal history category of V, the Guidelines range was 235 to 293 months of imprisonment. The

probation officer further explained that the district court must impose a term of at least five years on count three, to run consecutively to any other term of imprisonment imposed for count two. The probation officer also noted that Amendment 782, which would lower the base offense level for Coleman's drug trafficking offense by two levels, would likely become effective shortly after Coleman's sentencing hearing was scheduled. U.S.S.G. Supp. App. C Amend. 782 (eff. Nov. 1, 2014). The probation officer observed that the Amendment 782-adjusted range for count two would be 188 to 235 months of imprisonment.

At Coleman's sentencing hearing, Coleman's counsel objected to the probation officer's recommendation to impose a three-level enhancement under U.S.S.G. § 3B1.1(b), arguing that the record did not establish that Coleman was a manager or a supervisor of a criminal activity that involved five or more participants. The district court concluded that Coleman's heroin-distribution operation included "Mr. Coleman, Mr. Williams, Mr. Clark, and Cynthia Abrams and Jerry White, Peaches," all of whom "apparently came upon the grouping that was at various time distributing" the heroin. The district court also concluded that Coleman was "right in the thick of it in terms of understanding what went on." The district court therefore overruled Coleman's objection.

Coleman also moved for a downward departure, arguing that his criminal history score overstated the seriousness of his criminal past. In response to Coleman's motion, the district court described Coleman's personal history, beginning with "an unstable background" that gave rise to a pattern of "nonstop contact with police officers" and criminal activity "in Kalamazoo and other places over a period of many, many years." The court then observed that Coleman had fathered "a number of children born without the benefit of marriage, and therefore, that brings with it a whole series of other problems for those children as a result."

After stating that Coleman was a "reasonably intelligent person" with a "good head on [his] shoulders," the district court encouraged him to "get through this experience . . . and make something of [him]self." The district court then noted "the repeated nature of the incidents" that were before the court, Coleman's "complete" lack of respect for the law, and the need to build "some kind of an adequate deterrence" into Coleman's sentence to prevent "this kind of hard drug delivery out onto the street." The district court also reasoned that there was a need to protect the public against Coleman's criminal activity. To support this conclusion, the district court explained that Coleman had harmed the people who had bought heroin from him, as well as children whose fathers or mothers might have died or gone to prison because they used heroin that Coleman distributed.

The district court therefore denied Coleman's motion for a downward departure. The district court instead sentenced Coleman to 188 months of imprisonment on count two, imposing a sentence at the low end of the Amendment 782-adjusted range that went into effect shortly after Coleman's sentencing hearing, and sentenced Coleman to the mandatory minimum of 60 months on count three. The district court also granted the prosecutor's motion to dismiss counts one and four of the superseding indictment pursuant to Coleman's plea agreement.

Coleman appeals his sentence.

The Government contends that Coleman waived, via his plea agreement, his right to appeal his sentence. In response, Coleman argues that his appeal waiver is invalid because he did not knowingly and voluntarily waive his right to directly appeal his sentence and because his plea agreement was obtained through a coercive process. We need not determine whether Coleman's appeal waiver is valid because, for the reasons discussed below, Coleman's challenges to his sentence fail on the merits. Because "[t]he enforcement of appellate waivers

fits comfortably in the rubric of a mere claim-processing rule," assuming that a defendant's appellate waiver "is unenforceable does not constitute an impermissible assumption of jurisdiction." *United States v. Caruthers*, 458 F.3d 459, 472 n.6 (6th Cir. 2006). Accordingly, for present purposes we assume without deciding that Coleman's appellate waiver is not enforceable, and turn to the merits of Coleman's sentencing arguments.

Coleman contends that the district court erred in applying a three-level enhancement under U.S.S.G. § 3B1.1(b) to his offense level. Under § 3B1.1(b), if the defendant was "a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive," the sentencing court is to apply an increase of three levels. "The government bears the burden of proving that the enhancement applies by a preponderance of the evidence." *United States v. Vandeberg*, 201 F.3d 805, 811 (6th Cir. 2000). While Coleman does not contest the district court's conclusion that he was a manager or supervisor of criminal activity that included Coleman, his supplier Williams, his delivery man Clark, and his driver White, Coleman does argue that the district court erred in concluding that Abrams or "Peaches" qualified as a fifth participant in the criminal activity. Coleman therefore contends that the district court should not have added a three-level enhancement to his sentence under § 3B1.1(b). This argument is unavailing.

The district court properly concluded that the criminal activity involved at least five participants. This is because the district court's factual conclusion that Abrams was aware of the criminal activity at issue and knowingly offered her assistance to Coleman was not clearly erroneous. *See United States v. Moon*, 513 F.3d 527, 539−40 (6th Cir. 2008) (stating the scope of review). Accordingly, the district court properly applied the three-level enhancement under § 3B1.1(b).

Williams's and Abrams's statements to the police supported the district court's determination that Abrams knowingly assisted in the criminal activity at issue. Abrams told the police that she was a heroin user who lived with and had an intimate relationship with Coleman. In his post-arrest statement, Williams stated that Coleman, in addition to using Clark's assistance to travel to and from Chicago to obtain heroin, "use[d] . . . three other individuals to assist him in heroin distribution in Kalamazoo." The addendum included in the final presentencing record clarified that these three individuals were White, Abrams, and a woman called "Peaches." For the purposes of § 3B1.1, a participant is "a person who is criminally responsible for the commission of the offense, but need not have been convicted." *United States v. Anthony*, 280 F.3d 694, 698 (6th Cir. 2002) (quoting U.S.S.G. § 3B1.1, cmt. n.1). Persons "who were (i) aware of the criminal objective, and (ii) knowingly offered their assistance" are considered participants for the purposes of § 3B1.1. *Id.* It was not clearly erroneous for the district court to conclude, based on Abrams's and Williams's statements, that Abrams was aware of Coleman's criminal objective and knowingly offered to assist him in distributing heroin in Kalamazoo. The district court therefore properly determined that Abrams qualified as a fifth participant in the criminal activity.

Coleman argues that because Clark and Williams provided inconsistent statements about Abrams's role in Coleman's heroin distribution activities, the Government failed to establish by a preponderance of the evidence that there were at least five participants in the criminal activity. To support this argument, Coleman notes that although Clark stated that Abrams rode along with him and Coleman on their trips to buy heroin in Chicago, Clark did not indicate that Abrams was responsible for the distribution of the drugs in Kalamazoo. This argument lacks merit. This is because Clark did not contradict Williams's statement that Abrams assisted Coleman in

distributing heroin. Although Clark stated that he performed driving deliveries for Coleman and that White performed hand-to-hand deliveries, Clark never stated that he and White were the only people who assisted Coleman in distributing heroin in Kalamazoo. Clark also never stated that Abrams's involvement in the criminal activity was limited to accompanying the other members of the group on their trips to Chicago. The district court could therefore conclude, consistent with Clark's statement, that Abrams knowingly assisted Coleman in distributing heroin in Kalamazoo.

The district court's application of the three-level enhancement under § 3B1.1(b) must be upheld because the district court's conclusion that there were at least five participants in the criminal activity was not clearly erroneous. Because the record supports the district court's conclusion that Abrams qualified as a fifth participant in the criminal activity, we do not reach the issue of whether the woman known as "Peaches" and Williams's heroin supplier also qualified as participants. We also do not reach the issue of whether the criminal activity at issue was "otherwise extensive" for the purposes of § 3B1.1(b).

In addition to arguing that the district court improperly enhanced his sentence under § 3B1.1(b), Coleman argues that the district court weighed an impermissible factor at the sentencing hearing by considering Coleman's parentage of children born out of wedlock. Coleman contends that the district court's weighing of this impermissible factor resulted in a substantively unreasonable sentence. This argument is unavailing.

Although a sentence may be substantively unreasonable "when the district court . . . bases the sentence on impermissible factors," *United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007), the district court did not base Coleman's sentence on an impermissible factor. The district court therefore did not abuse its discretion when it sentenced Coleman. *See Gall v.*

*United States*, 552 U.S. 38, 41 (2007) (stating scope of review). It is true that the district court, while describing Coleman's personal history, observed that Coleman had "a number of children born without the benefit of marriage, and therefore, that brings with it a whole series of other problems for those children as a result." However, the district court mentioned Coleman's fathering of children out of wedlock not to support the court's chosen sentence, but rather to provide an illustration, as one of several examples, of the type of irresponsible behavior that Coleman had engaged in throughout his life. Prior to observing that Coleman had fathered children out of wedlock, the district court stated that Coleman's "irresponsibility" had begun at "a very young age." The district court then explained that Coleman's irresponsible behavior included "nonstop contact with police officers" in "Kalamazoo and other places over a period of many, many years," as well as fathering "a number of children born without the benefit of marriage." The district court therefore mentioned Coleman's fathering of children out of wedlock in order to provide an illustration of Coleman's irresponsible behavior. Taking note of an irrelevant, discouraged, or forbidden factor, as opposed to relying on that factor to support a sentence, is not an abuse of discretion. *See United States v. Christman*, 607 F.3d 1110, 1119 (6th Cir. 2010).

The district court did not rely on Coleman's fathering of children out of wedlock in determining Coleman's sentence. The court did not refer to Coleman's fathering of children out of wedlock at the point in the hearing when it explained its chosen sentence. Instead, the district court described Coleman's repeated engagement in criminal activity, his "complete lack of respect for law," the need to build "adequate deterrence" into his sentence to prevent the delivery of "hard drug[s] . . . out onto the street," and the need to protect the public.

The district court also did not refer to Coleman's fathering of children born out of wedlock when it explained why there was a need to protect the public against Coleman's criminal activities. Rather, the district court reasoned that Coleman had "made a mess of [his customers'] lives" by selling heroin to them. The district court also observed that Coleman may have harmed children whose fathers or mothers may have died or gone to prison because they used heroin that Coleman had sold to them. The district court's explanation of Coleman's sentence therefore did not indicate, much less prove, that the district court was using Coleman's status as the father of children born out of wedlock to determine his sentence. This record, moreover, leads to the conclusion that the district court would have imposed the same sentence absent Coleman's parental status.

Moreover, the district court sentenced Coleman at the bottom of the Amendment 782-adjusted range that went into effect shortly after Coleman's sentencing hearing. "In evaluating the substantive aspect of a sentence, we may apply a rebuttable presumption of reasonableness to sentences within the Guidelines," *United States v. Pearce*, 531 F.3d 374, 384 (6th Cir. 2008), and also may presume that a below-Guidelines sentence is not unreasonably severe, *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008). Thus, a rebuttable presumption of reasonableness attaches to Coleman's sentence. Because the district court did not base Coleman's sentence on an impermissible factor, Coleman has failed to rebut the presumption that his sentence was reasonable.

Our decision in *United States v. Barahona-Montenegro*, 565 F.3d 980 (6th Cir. 2009), does not require a different result. In *Barahona-Montenegro*, this court held that the defendant's sentence was procedurally unreasonable in part because the district court failed to "properly calculate the Guidelines range or adequately explain the chosen sentence," and "what little

explanation the district court did provide referenced irrelevant factors such as the fact that [the defendant] had five children who had been born out of wedlock." *Id*. at 983, 985. Here, in contrast, the district court properly calculated the Guidelines range and thoughtfully explained its chosen sentence. Further, the district court did not rely on Coleman's marital status when he fathered children in determining his sentence, but merely observed that Coleman had fathered children out of wedlock when describing Coleman's personal history. *Barahona-Montenegro* is therefore inapposite.

When taking note of elements of a defendant's history and personal circumstances, district courts should of course use care to avoid leaving an impression that irrelevant factors may have affected the sentence. However, a review of the entire sentencing transcript establishes that the district court here did not rely on Coleman's status as the father of children out of wedlock when it determined his sentence. Accordingly, Coleman has failed to rebut the presumption that his sentence was substantively reasonable.

The judgment of the district court is affirmed.